**BRAZOS ELECTRIC POWER COOPERATIVE, INC.,**
Appellant

v.

**Robert Wade WEBER, Appellee.**

No. 05–07–00080–CV.

Court of Appeals of Texas,
Dallas.

Nov. 6, 2007.

Shane M. Sanders, Segrest & Segrest, P.C., McGregor, TX, for Appellant.

Robert H. Roeder, Richard M. Abernathy, Abernathy, Roeder, Boyd & Joplin, McKinney, TX, for Appellee.

Before Justices WHITTINGTON, WRIGHT, and FITZGERALD.

## OPINION

Opinion by Justice FITZGERALD.

Brazos Electric Power Cooperative, Inc. undertook eminent domain proceedings, seeking to condemn property owned by Robert Wade Weber for a power substation. After the special commissioners[1] determined the value of the property at issue, Brazos Electric voluntarily dismissed the proceedings. The trial court awarded Weber $201,213 in attorney's fees and expenses. Brazos Electric appeals, arguing the award was based on insufficient evidence of a reasonable and necessary fee and was inequitable and unjust. We affirm the trial court's judgment.

### STANDARD OF REVIEW

 To determine the correct standard of review for an award of attorney's fees, we look first to the statute authorizing those fees. *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex.1998). In this case, the relevant statute states:

A court that hears and grants a motion to dismiss a condemnation proceeding made by a condemnor ... shall make an allowance to the property owner for reasonable and necessary fees for attorneys, appraisers, and photographers and for the other expenses incurred by the property owner to the date of the hearing.

TEX. PROP.CODE ANN. § 21.019(b) (Vernon 2003). The statute mandates an award of fees and expenses. *Id.; Rosenthal v. Ottis*, 865 S.W.2d 525, 528 (Tex.App.-Corpus Christi 1993, no writ). And as to the attorney's fees portion of the award, the only criteria to be considered by the trial court is whether the fees are reasonable and necessary. *City of Wharton v. Stavena*, 771 S.W.2d 594, 595 (Tex.App.-Corpus Christi 1989, writ denied). Our review of the trial court's award, in turn, asks whether there was sufficient evidence that the fees awarded were in fact reasonable and necessary. *See Bocquet*, 972 S.W.2d at 21.

### EVIDENCE OF ATTORNEY'S FEES

Three witnesses testified on Weber's behalf: Weber himself, Weber's attorney, and an attorney's fee expert.

### Robert Weber

Weber testified that Brazos Electric undertook condemnation proceedings on approximately five and one half acres of his land fronting Highway 121. Weber engaged attorney Robert Roeder to represent him in the condemnation proceedings. In a written agreement, Weber agreed to pay Roeder a contingency fee of twenty percent, based on the difference between the last best offer made by Brazos Electric

---

1. The Texas Property Code provides:
 The judge of a court in which a condemnation petition is filed or to which an eminent domain case is assigned shall appoint three disinterested freeholders who reside in the county as special commissioners to assess the damages of the owner of the property being condemned.
 TEX. PROP.CODE ANN. § 21.014(a) (Vernon 2003).

and the award made by the special commissioners. He testified the last best offer was approximately $2.9 million; the special commissioners' award was $3.9 million. Given a difference of approximately $1 million, Roeder's fee would be approximately $200,000 plus the expert fees Roeder had paid. Weber testified this fee was fair and reasonable. There was no provision in the fee agreement calling for a different payment scheme in the event Brazos Electric dismissed the case.

### Lewis Isaacks

Lewis Isaacks testified as an expert witness on the subject of attorney's fees in condemnation cases. At the time of trial, Isaacks had been licensed to practice law in Texas for twenty-six years and had been board certified in civil trial law for more than ten years. He does civil trial work, specializing generally in cases of eminent domain. He offices with his law firm in Plano, Texas, and is familiar with reasonable and necessary fees in condemnation cases in Collin County. Isaacks has represented both condemnees and condemnors in various projects. He estimated he had represented condemnees in hundreds of cases and condemnors in something less than fifty cases. Isaacks testified he typically charges a condemnee a one-third contingency fee. He testified the standard in Collin County and North Texas ranges from one-third to forty percent of the increase over the condemnor's final offer and the amount recovered.

Isaacks affirmed that in setting his own fees, he takes into consideration the standards set forth in rule 1.04 of the rules of professional conduct. He testified that he considered each of the following factors: the time and labor required; the novelty and difficulty of the questions involved; the skill requisite to perform the legal services; the fee customarily charged in the locality for similar legal services; the amount involved and the results obtained; the time limitations imposed by the client or by the circumstances; the nature and length of the professional relationship with the client; the experience, representation, and ability of the lawyer performing the services; and whether the fee is fixed or contingent on the results obtained or the uncertainty of collection before the legal services have been rendered.

As to the specific fee at issue in this case, Isaacks testified he had known Roeder for twenty-six years and had tried condemnation cases against him over the years. He had reviewed Roeder's file and opined that $200,000 was a fair and reasonable fee. Indeed, Isaacks stated Roeder's fee was "probably less than a reasonable fee" given that it was based on only twenty percent, which was lower than the standard in the relevant area. Isaacks testified that he had represented a condemnor when condemnation proceedings were dismissed: his client was required to pay the condemnee's fees based on a contingent fee arrangement in that case. A contingent fee arrangement is the standard, according to Isaacks, because a landowner is generally not able to pay for a costly proceeding as it goes along.

Isaacks explained that he does not represent condemnees on other cases on an hourly rate, only on a contingency basis. Under one of his agreements, if he recovered nothing for a client, he would recover nothing for himself. But he drew a distinction between failing to accomplish a recovery for his client and the condemnor voluntarily dismissing the proceeding. The latter, i.e., voluntary dismissal, can be a very favorable result for the client. In his opinion, an attorney would be penalized for obtaining a good result if the fees mandated by the property code were not paid after a voluntary dismissal. Isaacks

agreed that the property code speaks of reasonable and necessary costs incurred, but in his opinion the obligation to pay an attorney's fee is incurred when the fee agreement is signed.

### Robert Roeder

Weber's final witness was his attorney, Robert Roeder. Roeder testified he had been a real estate lawyer since 1974, practicing largely in the area of eminent domain and condemnation. He is familiar with a reasonable and necessary attorney's fee in a condemnation case on behalf of a condemnee in Collin County because he has both charged and set fees for representing condemnees in Collin County since 1974. Roeder testified he had represented between fifty and one hundred condemnees, and he has never charged an hourly rate in those cases. He normally charges thirty percent of the difference between the offer given by the condemnee when the client comes and engages him and the award ultimately made at a special commissioners hearing; he charges forty percent if the award is appealed to trial.

Roeder was hired by Weber to handle this matter. Roeder has known Weber since 1975 or 1976, and Weber has been a client of Roeder's since that time. He and Weber had a written agreement for twenty percent plus costs. The agreement had no provision for an hourly rate if the case were dismissed. Roeder looked at rule 1.04 and considered all its factors in determining how to calculate a reasonable fee. Roeder testified he had an opinion of a fair and reasonable fee in Collin County for the work he performed for Weber in this condemnation case: he believes twenty percent "is more than fair." Roeder stated he usually charges thirty percent, making the fee in this case lower than the standard fee in Collin County. He believes the outcome represented a very good result for his client. The calculations used to determine Roeder's total charge to Weber of $201,213.80 were admitted into evidence in a written exhibit.[2] Roeder conceded that Weber does not owe him a fee in the neighborhood of $200,000, because when the proceeding is dismissed, Weber will receive nothing, so Roeder will receive nothing from Weber pursuant to their agreement.

Roeder described the work he did on behalf of Weber in this matter. In an effort to get the highest possible offer for his client, Roeder represented Weber in negotiations for the property from November 2005 through July 2006, when the negotiations reached an impasse. The negotiations involved identifying the size and location of the tract Brazos Electric wanted as well as the price to be paid. Roeder testified that the negotiations and hearing actually resulted in less acreage being identified for condemnation and more money being paid to his client.

Roeder walked through each of the rule 1.04 factors and testified that, considering those factors, he believes the fee he charged in this case is reasonable and necessary in Collin County.

### SUFFICIENCY OF THE EVIDENCE

█ The supreme court has directed us to evaluate the sufficiency of the evidence supporting an attorney's fees award by looking to the factors set forth in rule 1.04 of the Texas Disciplinary Rules of Professional Conduct:

> (1) the time and labor required, the novelty and difficulty of the questions in-

2. The amount charged includes the $2875 fee paid by Roeder to the expert who appeared at the special commissioners hearing on Web-

er's behalf. Brazos Electric does not challenge this amount of the award.

volved, and the skill required to perform the legal service properly;

(2) the likelihood ... that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex.1997) (citing TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04(b), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon 2005) (TEX. STATE BAR R. art. X, § 9)). It is not mandatory that the record include evidence on each of these factors. *Burnside Air Conditioning and Heating, Inc. v. T.S. Young Corp.*, 113 S.W.3d 889, 897–98 (Tex. App.-Dallas 2003, no pet.).

At the outset, Isaacks and Roeder were both asked whether they considered each of the rule 1.04 factors in setting fees; both testified they did. Likewise, both were asked whether—considering the rule 1.04 factors—Roeder's fee (and thus the trial court's award) was a reasonable and necessary fee; both said it was. Beyond these opinions, the court heard significant evidence addressing the specific concerns of the relevant factors.

- *The Time and Labor Involved.* Roeder testified he participated in negoti-

ations for land that stretched over some eight months. He hired an expert for, and participated in, the special commissioners hearing as well.

- *The Fee Customarily Charged in the Locality for Similar Legal Services.* Isaacks testified the standard fee in Collin County and North Texas for similar legal services ranges from one-third to forty percent of the increase over the condemnor's final offer and the amount recovered. Roeder testified he usually charges a thirty percent fee in such cases. Here, Roeder charged his long-time client a lower percentage than the standard rate.

- *The Amount Involved and the Results Obtained.* Roeder testified Brazos Electric initially sought to take between six and one-half and seven acres in the condemnation proceeding, for which they offered approximately $2.8 million. Negotiations narrowed the proposed taking to approximately five and one-half acres, for which the offer was $2.9 million. The special commissioners were ultimately persuaded to value the five and one-half acre tract at $3.9 million. Had the process gone forward, therefore, we could conclude Roeder had increased his client's recovery by more than an acre of land and one million dollars. We can reasonably infer further that this successful representation persuaded Brazos Electric to abandon the condemnation proceedings, leaving the client with his entire property intact.

- *The Nature and Length of the Professional Relationship With the Client.* Roeder testified he had known and represented Weber since 1975 or 1976, or approximately thirty years.

- *The Experience, Reputation, and Ability of the Lawyer Performing the Services.* Roeder testified he had prac-

ticed law since 1974 and specialized in condemnation and eminent domain proceedings. He had represented between fifty and one hundred condemnees over that time. Isaacs, an acknowledged expert in this area of practice, was familiar with Roeder's work and had litigated with him in the past.

- *Whether the Fee is Fixed or Contingent on Results Obtained.* This factor lies at the heart of this appeal. Both Isaacs and Roeder testified a contingency fee was the standard for this type of legal service. Both testified that they only charged contingency fees in their own practices when representing condemnees.

None of this testimony was controverted.

However, Brazos Electric argues the award in this case violates the dictates of the Texas Supreme Court in *Arthur Andersen.* In that case, the supreme court rejected an attorney's fee award that had been made as a percentage of the ultimate recovery in a DTPA case. 945 S.W.2d at 819. The court made two significant pronouncements that guide our review in this case. First, a party may not merely offer his contingent fee contract and, on that basis alone, seek a recovery of attorney's fees; his proof must include evidence of the rule 1.04 factors so the factfinder has a meaningful way to determine if the fee was reasonable and necessary. *Id.* at 818. In Weber's case, the award was not based merely on his contingent fee agreement. Both Roeder and Isaacks testified they considered the rule 1.04 factors and, in light of those factors, the award was reasonable and necessary. We have identified the evidence offered at trial that supports such a conclusion. Second, the *Arthur Andersen* court directed that the factfinder must award attorney's fees in a specific dollar amount rather than as a percentage of some unknown recovery. *Id.* at 818–19. In Weber's case, the trial court calculated the fee in a specific dollar amount rather than a percentage, because evidence was offered to establish conclusively the amounts upon which the fee was based.

We conclude the contingent-fee concerns pointed out by the court in *Arthur Andersen* have been addressed and overcome in this case. We conclude that ample evidence supports the trial court's award. We overrule Brazos Electric's sole issue. We affirm the trial court's judgment.