**MEDICAL HOSPITAL OF BUNA TEXAS, INC. d/b/a Buna Medical Center Rehabilitation Nursing, Appellant**

**v.**

**Iona L. WHEATLEY, individually and as representative of the Estate of Dorothy L. Helm, Appellee.**

**No. 09–08–00183–CV.**

Court of Appeals of Texas, Beaumont.

Submitted Sept. 4, 2008.

Decided April 23, 2009.

Marvin C. Moos, Tory F. Taylor, Ebanks, Smith & Carlson, L.L.P., Houston, TX, for appellant.

Bob K. Monk, Brandon P. Monk, McPherson, Monk, Hughes, Bradley, Wimberley & Steele, L.L.P., Port Arthur, TX, for appellee.

Before GAULTNEY, KREGER, and HORTON, JJ.

## OPINION

CHARLES KREGER, Justice.

Medical Hospital of Buna, Texas, Inc., d/b/a Buna Medical Center Rehabilitation Nursing ("Buna Medical Center") brings this interlocutory appeal from the trial court's denial of its motion to dismiss for plaintiff Iona Wheatley's failure to file required expert reports pursuant to the Medical Liability Act ("MLA"). *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 74.001–.507 (Vernon 2005 and Supp.2008). Because we find that the claims asserted by plaintiff constitute health care liability claims subject to the MLA, we reverse the decision of the court below.

## BACKGROUND

On October 17, 2007, Wheatley brought the underlying suit against Buna Medical Center and NCM of Texas, Inc., d/b/a Edgewood Manor Nursing Home where Helm was a resident at the time of her death, alleging that Helm was deprived of basic human necessities during Hurricane Rita, which ultimately led to her death. Helm is alleged to have died on October 10, 2005, at Edgewood in Texarkana, Texas, where she was transferred following Hurricane Rita. On February 1, 2008, Wheatley filed her First Amended Petition, which set forth allegations and claims virtually identical to those set forth in her Original Petition.[1]

Wheatley alleged that she sought the services of Buna Medical Center nursing home in connection with the convalescence of her elderly mother, Helm. On or about September 24, 2005, Hurricane Rita hit the coastal area of Texas, necessitating a mandatory evacuation of many southeasterly Texas homes and businesses, including, but not limited to, Buna Medical Center, the nursing home facility in which Helm was a resident. Wheatley claimed that "[a]s a result of the evacuation, [Helm] was transferred to the nursing home owned and/or operated by Defendant, [Edgewood] Manor, where she died on October 10, 2005, as a result of the negligent care she received at the hands of one or both Defendants." In her First Amended Petition Wheatley made the following allegations in support of her claims against the nursing home entities:

> Plaintiff would show that the injuries and death of [Helm] were a direct result of the Defendants' breach of the duty of care owed to Plaintiff and Decedent. Plaintiff would show that one or both Defendants have failed, generally and specifically as to [Helm], to adequately staff or supervise the personnel at the nursing home, failed to properly attend to the needs of the residents of the nursing home, failed to properly monitor the activities and status of the residents of the nursing home, to prevent injury.

1. Wheatley's First Amended Petition was virtually identical to her Original Petition with the exception that Wheatley substituted Capstone Health Group, L.L.C. d/b/a Edgewood Manor Nursing Home for NCM of Texas, Inc., d/b/a Edgewood Manor Nursing Home. Wheatley simultaneously filed a motion to restyle the proceedings requesting the court to substitute Capstone Healthcare, L.L.C. for NCM of Texas, Inc. based on the sale of the Edgewood Manor Nursing Home. The trial court granted this motion.

or death and that all of these activities constitute negligence and directly resulted in the death of [Helm].

Wheatley also alleged that Defendants "failed to provide [Helm] with adequate supervision in order to provide her with safety and to prevent a catastrophic life-threatening event from occurring...." Wheatley asserted that the Defendants had or would receive notice of her claim pursuant to section 74.051 of the MLA and that she had complied with all the requirements of section 74.051 in filing her claim. *Id.* § 74.051. Finally, Wheatley alleged that limitations on non-economic damages in medical negligence cases under the MLA violated the Texas and United States Constitutions. *See id.* § 74.310.

On March 12, 2008, Buna Medical Center filed a motion to dismiss Wheatley's suit under section 74.351 of the Texas Civil Practice and Remedies Code as a result of Wheatley's failure to file an expert report by the 120th day after the date her Original Petition was filed in compliance with the MLA. Wheatley did not file a written response to the motion. On April 4, 2008, the trial court heard defendant's motion to dismiss. On the day of hearing, Wheatley filed a Second Amended Petition.

In Wheatley's Second Amended Petition she asserted claims for intentional, reckless and negligent bodily injury, and for failing to provide Helm with adequate supervision. Wheatley deleted all references to Chapter 74 of the MLA from her allegations. In her Second Amended Petition Wheatley alleged the following in support of her claims:

Prior to Hurricane Rita coming ashore, BUNA MEDICAL abandoned many of the facility's residents, including the elderly Decedent, at the facility. No notice of the intended abandonment was given to Plaintiff. No provision was made to prevent the obvious resulting harm. Decedent was deprived of food and water, ultimately resulting in her death. At some point, Decedent was transported to EDGEWOOD MANOR, where she died on October 10, 2005 from dehydration and malnutrition.

Wheatley again alleged, "one or both Defendants failed to provide [Helm] with adequate supervision in order to prevent a catastrophic life-threatening event from occurring and failed to prevent [Helm] from suffering conditions which led or contributed to her untimely and wrongful death."

At the hearing on the motion to dismiss it was undisputed that the 120–day deadline for filing expert reports required under the MLA had passed. The trial court heard arguments from both parties as to whether Wheatley's claims were health care liability claims giving rise to the duty to file an expert report under the time limitations set forth in the statute. Without making any findings, the trial court denied the motion to dismiss. No party requested findings of fact or conclusions of law from the trial court.

## STANDARD OF REVIEW

"We generally review a trial court's ruling on a motion to dismiss under section 74.351(b) for abuse of discretion." *Schmidt v. Dubose,* 259 S.W.3d 213, 215 (Tex.App.-Beaumont 2008, no pet.). Where, as here, the issues involve statutory construction and the applicability of Chapter 74 to plaintiff's claims, a de novo standard of review is applied. *See Buck v. Blum,* 130 S.W.3d 285, 290 (Tex.App.-Houston [14th Dist.] 2004, no pet.).

## THE MEDICAL LIABILITY ACT

Section 74.351 of the Texas Civil Practice & Remedies Code provides as follows:

(a) In a health care liability claim, a claimant shall, not later than the 120th day after the date the original petition was filed, serve on each party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted. The date for serving the report may be extended by written agreement of the affected parties. Each defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the 21st day after the date it was served, failing which all objections are waived.

(b) If, as to a defendant physician or health care provider, an expert report has not been served within the period specified by Subsection (a), the court, on the motion of the affected physician or health care provider, shall, subject to Subsection (c), enter an order that:

(1) awards to the affected physician or health care provider reasonable attorney's fees and costs of court incurred by the physician or health care provider; and

(2) dismisses the claim with respect to the physician or health care provider, with prejudice to the refiling of the claim.

Tex. Civ. Prac. & Rem.Code Ann. § 74.351(a)-(b). A health care liability claim is defined as:

[A] cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death

of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

*Id.* § 74.001(13).

On appeal, Buna Medical Center argues that Wheatley's claims are health care liability claims, subject to the requirements of the MLA, and that the trial court erred in refusing to dismiss the case under section 74.351(a). Wheatley concedes that her Original and First Amended Petition alleged health care liability claims, but argues that the MLA does not apply because 1) her Original Petition and First Amended Petition only pleaded health care liability claims in the alternative; and 2) her Second Amended Petition deleted her health care liability claims and pursued only non-healthcare liability claims.

### PLAINTIFF'S SECOND AMENDED PETITION

██ A plaintiff cannot use artful pleading to avoid the Act's requirements when the essence of the suit is a health care liability claim. *Diversicare Gen. Partner, Inc. v. Rubio,* 185 S.W.3d 842, 851 (Tex.2005); *see also Empowerment Options, Inc. v. Easley,* No. 09–06–148 CV, 2006 WL 3239527, at *2 (Tex.App.-Beaumont Nov. 9, 2006, pet denied) (not designated for publication). Stated differently, "[a] plaintiff cannot avoid the requirements of chapter 74 by attempting to recast a health care liability claim as a different cause of action...." *Wilson N. Jones Mem'l Hosp. v. Ammons,* 266 S.W.3d 51, 57 (Tex.App.-Dallas 2008, pet. filed). This is true even where a plaintiff attempts to completely abandon its health care liability claims in favor of alternative claims. *See NCED Mental Health, Inc. v. Kidd,* 214 S.W.3d 28, 36–37 (Tex.App.-El Paso 2006, no pet.) (Where plaintiff non-suited her medical malpractice claims following a motion to dismiss by the defendant and

amended her petition to assert only negligent hiring claims, court held negligent hiring claims were in essence health care liability claims and reversed).

■ We are not bound by Wheatley's characterization of her pleadings. *See Empowerment Options, Inc.,* 2006 WL 3239527, at *2 (citing *Theroux v. Vick,* 163 S.W.3d 111, 114 (Tex.App.-San Antonio 2005, pet. denied)); *see also Diversicare Gen. Partners, Inc.,* 185 S.W.3d at 851; *Garland Cmty. Hosp. v. Rose,* 156 S.W.3d 541, 543 (Tex.2004). The Texas Supreme Court in *Diversicare* explained,

> It is well settled that a health care liability claim cannot be recast as another cause of action to avoid the requirements of the MLIIA. We "are not bound by niceties of pleadings, and a mere 'recasting' of a health care liability claim based on physician or health care provider negligence in the garb of some other cause of action is not sufficient to preclude the application of [chapter 74]."

*Diversicare Gen. Partners, Inc.,* 185 S.W.3d at 851 (citations omitted). Applying these rules we have also held that an amended pleading does not trigger a new 120–day deadline to file the required expert report under Chapter 74. *See Empowerment Options, Inc.,* 2006 WL 3239527, at *4. *See also Maxwell v. Seifert,* 237 S.W.3d 423, 426 (Tex.App.-Houston [14th Dist.] 2007, pet. denied) (amended malpractice petition asserting new claim did not restart 120–day period for filing medical expert report).

Wheatley argues that her Second Amended Petition deleted her health care liability claims and that "[t]he duty complained about by Ms. Wheatley [in her Second Amended Petition] is the failure to notify her that her mother was being abandoned without food, water, or basic human necessities." We are not persuaded that Wheatley's Second Amended Petition asserts a new claim. *See Care Center Ltd. v. Sutton,* No. 09–07–469 CV, 2008 WL 1745862, at *5 (Tex.App.-Beaumont Apr.17, 2008, pet. filed)(not designated for publication)(Where plaintiff's second amended petition asserted additional claims arising "out of the same transaction or set of events" this court held that section 74.351 required plaintiff to serve the defendant with an expert report within 120 days of filing of her original petition). Wheatley complains of the same acts and omissions with respect to the care of Helm in both her Original, First, and Second Amended Petitions. The duty of a nursing home to provide its residents with "basic human necessities" and to "properly attend to the needs of the residents of the nursing home" are one in the same. Therefore, to the extent we determine that a breach of these duties constitutes a health care liability claim, the deadline to file the required expert reports will run from the date of the filing of Wheatley's Original Petition. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.351(a).

## HEALTH CARE LIABILITY CLAIMS

■ A cause of action against a health care provider is a health care liability claim under the MLA if it is based upon a "claimed departure from accepted standards of medical care, or health care," or a "claimed departure from accepted standards" of "safety or professional or administrative services directly related to health care[.]" *Id.* § 74.001(13). To determine whether a claim constitutes a health care liability claim under the statute, courts look to the underlying nature of the allegations. *See Garland Cmty. Hosp.,* 156 S.W.3d at 543. We consider the alleged wrongful conduct and the duties allegedly breached, rather than the injuries suffered. *Diversicare Gen. Partners, Inc.,* 185 S.W.3d at 851. Where an act or omis-

sion that forms the basis of the complaint is an inseparable part of the rendition of health care services, then the claim is a health care liability claim, irrespective of how it was pleaded. *See Garland Cmty. Hosp.*, 156 S.W.3d at 543; *see also Omaha Healthcare Center, L.L.C. v. Johnson*, 246 S.W.3d 278, 284 (Tex.App.-Texarkana 2008, pet. filed). We conclude that the failure to properly supervise Helm or to provide her with basic human necessities, such as food and water, are acts or omissions that are inseparable from the rendition of health care services.

■ "Health care" is defined broadly by the MLA as "any act or treatment performed or furnished, *or that should have been performed or furnished,* by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.001(10) (emphasis added). Providing for the fundamental needs of nursing home residents falls within the ambit of "health care" as defined by the statute. *See id; see also Diversicare Gen. Partners, Inc.*, 185 S.W.3d at 849–850.

In *Diversicare* the Texas Supreme Court discussed health care services and what it considered to be inseparable from the rendition of health care services. The Court stated,

A nursing home provides services to its patients, often around the clock, which include supervising daily activities; providing routine examinations and visits with physicians; providing dietary, pharmaceutical, and routine dental services; monitoring the physical and mental conditions of its residents; administering medications; and meeting the fundamental care needs of the residents. These fundamental needs include, where necessary, feeding, dressing, assisting the resident with walking, and providing sanitary living conditions. These services are provided by professional staff including physicians, nurses, nurse aides, and orderlies who care for the residents.

The level and types of health care services provided vary with the needs and capabilities, both physical and mental, of the patients.... The nature and intensity of care and treatment, including professional supervision, monitoring, assessment, quantities and types of medication, and other medical treatment are judgments made by professionals trained and experienced in treating and caring for patients and the patient population in their health care facilities.

*Diversicare Gen. Partners, Inc.*, 185 S.W.3d at 849–50 (citations omitted). The Court concluded that "Diversicare's training and staffing policies and supervision and protection of ... residents are integral components of Diversicare's rendition of health care services...." *Id.* at 850. The Court also explained the difference between the duty owed by a health care provider to its patients and the duty owed by premises owners to invitees:

The obligation of a health care facility to its patients is not the same as the general duty a premises owner owes to invitees. Health care staff make judgments about the care, treatment, and protection of individual patients and the patient populations in their facilities based on the mental and physical care the patients require. The health care standard applies the ordinary care of trained and experienced medical professionals to the treatment of patients entrusted to them.

*Id.; see also Empowerment Options Inc.*, 2006 WL 3239527, at *3.

■ Wheatley claims that the nursing home facility failed to provide adequate

food and water to Helm, and failed to adequately supervise Helm, resulting in death due to dehydration and malnutrition. These are claims for breaches of the standard of care for a health care provider because supervision and providing for the fundamental care needs of Helm are inseparable from health care services provided to Helm as a resident of the nursing home. *See Diversicare Gen. Partners, Inc.,* 185 S.W.3d at 849–850, 853; *see also* TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(10), (13). Therefore, Wheatley's claims that Buna Medical Center failed to supervise and properly attend to the fundamental needs of Helm during Hurricane Rita are health care liability claims subject to the provisions of section 74.351.[2]

## APPLICATION OF THE MLA

Section 74.351 provides that when the required expert reports are not served by the claimant by the 120th day after the date the original petition was filed, the court, on the motion of the affected health care provider shall dismiss the claim with prejudice to refiling, and award the affected health care provider reasonable attorney's fees and costs incurred by the health care provider. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b)(1)-(2). The expert report requirement is not a requirement for recovery, it "is a threshold requirement for the continuation of a lawsuit[.]" *Sloan v. Farmer,* 217 S.W.3d 763, 768 (Tex.App.-Dallas 2007, pet. denied). When a claimant fails to file the required report and the defendant makes a motion pursuant to section 74.351(b), "the statute

requires that the trial court shall award costs and fees to that defendant and dismiss the claim with respect to that defendant." *Omaha Healthcare Center, L.L.C.,* 246 S.W.3d at 280. Dismissal under section 74.351(b) is not discretionary, it is mandatory. *Id.*

Wheatley filed her Original Petition on October 17, 2007. Her 120–day deadline to file an expert report and curriculum vitae was, therefore, February 14, 2008. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a). Wheatley failed to file the required expert reports. Wheatley's attempt to avoid the application of the MLA by re-pleading her health care liability claims after failing to comply with chapter 74 fails under Texas law. *See NCED Mental Health, Inc.,* 214 S.W.3d at 33–34. Because Wheatley failed to file the required expert reports within the time period set forth in section 74.351(a), we sustain Buna Medical Center's appellate issue complaining of the denial of its motion to dismiss.

## AWARD OF ATTORNEY'S FEES

Like dismissal under section 74.351, an award of costs and attorney's fees under section 74.351 is not discretionary. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b)(1); *see also Omaha Healthcare Center L.L.C.,* 246 S.W.3d at 280. As a counterpoint on appeal Wheatley argues that defendant failed to show proof of reasonable attorney's fees sufficient to support an award of fees under section 74.351(b)(1). We overrule Wheatley's counterpoint.

**2.** Wheatley argues on appeal that expert testimony would not be needed to establish the injury and ultimate death of a resident abandoned without notice and deprived of food and water. We recognize that the necessity of expert testimony from a medical or health care professional can be an important factor in determining whether a cause of action is an inseparable part of the rendition of medical or health care services. *See Diversicare,* 185 S.W.3d at 848. However, the fact that expert testimony may not be necessary to support a verdict at trial does not necessarily mean that a claim is not a health care liability claim under Chapter 74. *Murphy v. Russell,* 167 S.W.3d 835, 838 (Tex.2005).

 Buna Medical Center submitted an affidavit in support of its attorney's fees with its motion to dismiss. We note that while Texas courts have set forth factors that may be considered in determining the reasonableness of attorney's fees, courts are not required to receive evidence on each of those factors. *See Brazos Elec. Power Co-op., Inc. v. Weber,* 238 S.W.3d 582, 586 (Tex.App.-Dallas 2007, no pet.); *Burnside Air Conditioning and Heating, Inc. v. T.S. Young Corp.,* 113 S.W.3d 889, 897–98 (Tex.App.-Dallas 2003, no pet.); *Hagedorn v. Tisdale,* 73 S.W.3d 341, 353 (Tex.App.-Amarillo 2002, no pet). The court can look at "the entire record, the evidence presented on reasonableness, the amount in controversy, the common knowledge of the participants as lawyers and judges, and the relative success of the parties." *Hagedorn,* 73 S.W.3d at 353. Moreover, "[w]hat constitutes reasonable attorney's fees is a question of fact, but clear, direct, uncontroverted evidence of attorney's fees is taken as true as a matter of law, especially when the opposing party has not rebutted the evidence." *Collins v. Guinn,* 102 S.W.3d 825, 836 (Tex.App.-Texarkana 2003, pet. denied) (quoting *Merchandise Ctr., Inc. v. WNS, Inc.,* 85 S.W.3d 389, 397 (Tex.App.-Texarkana 2002, no pet.)).

The affidavit provided by Buna Medical Center's attorney was made on personal knowledge, and demonstrated the affiant's competence as an attorney who found the fees to be reasonable based upon his education, his experience defending health care providers in similar cases, and his training. Wheatley presented no evidence to controvert the affidavit supporting Buna Medical Center's request for attorney's fees.

To allow the trial court to comply with the legislature's mandate, we reverse the trial court's order denying Buna Medical Center's motion to dismiss and remand the cause to the trial court for entry of a judgment dismissing Wheatley's claims against Buna Medical Center with prejudice for failure to furnish an expert report as required by section 74.351 of the Texas Civil Practice and Remedies Code and to award Buna Medical Center its reasonable attorney's fees and court costs.

REVERSED AND REMANDED.

DAVID GAULTNEY, Justice, dissenting.

Plaintiff alleges the defendant abandoned Dorothy Helm at the defendant's facility "[p]rior to Hurricane Rita coming ashore[,]" thereby depriving her of food and water; as a result, plaintiff alleges, Helm died of dehydration and malnutrition. The second amended petition asserts: [3]

> On or about September 24, 2005, Hurricane Rita hit the Gulf Coast area, including the town of Buna, Texas, where BUNA MEDICAL is located. Prior to Hurricane Rita coming ashore, BUNA MEDICAL abandoned many of the facility's residents, including the elderly Decedent, at the facility. No notice of the intended abandonment was given to Plaintiff. No provision was made to prevent the obvious resulting harm. Decedent was deprived of food and water, ultimately resulting in her death. At some point, Decedent was transported to EDGEWOOD MANOR, where she died on October 10, 2005 from dehydration and malnutrition. Plaintiff attempted to locate her mother (Decedent) both

---

**3.** After the filing of the defendant's motion to dismiss, the plaintiff filed the second amended petition.

before and after Hurricane Rita hit, to no avail. Plaintiff did not learn of the abandonment, nor was she informed of her mother's whereabouts, until after her mother's death, at which time she was finally contacted by an employee of EDGEWOOD MANOR.

In denying the motion to dismiss, the trial court must have presumed the pleading was filed in good faith. *See generally* TEX.R. CIV. P. 13 ("Courts shall presume that pleadings, motions, and other papers are filed in good faith."). Artful pleading is not permitted, but this is a pleading of fact, and the rules provide other remedies if there is no truth to the factual allegation. The claim may be disposed of by summary judgment; sanctions are available if the claim is shown to be frivolous. *See* TEX.R. CIV. P. 13, 166a.

Whether there is evidence to support plaintiff's allegation is not the issue in this appeal, and one that an appellate court cannot determine on this record. As a practical matter, an appellate court has no way on this limited record to independently determine whether the pleading is true. Plaintiff's pleading alleges her mother was abandoned without food and water, and that the deprivation of water and food caused her mother's death. Plaintiff alleges that "[n]o provision was made to prevent the obvious resulting harm[,]" and "[n]o notice of the intended abandonment was given...." In her brief in this Court, she argues Helm's "status as a nursing home patient is irrelevant, as none of the wrongful actions alleged involve any medical treatment." Because the trial court denied the motion to dismiss and the appellate record is limited at this preliminary stage in the case, this Court should presume for purpose of appellate review that the facts pled by plaintiff in the trial court are true.

Some claims are based on acts separable from health care, and therefore are not governed by Chapter 74. *See generally Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 854 (Tex.2005) (Statute applies to claims arising from acts or omissions "inseparable from the provision of health care."); *see also Garland Cmty. Hosp. v. Rose*, 156 S.W.3d 541, 544 (Tex. 2004) ("If the act or omission alleged in the complaint is an inseparable part of the rendition of health care services, then the claim is a health care liability claim."); *Holguin v. Laredo Reg'l Med. Ctr., L.P.*, 256 S.W.3d 349, 353 (Tex.App.-San Antonio 2008, no pet.) (citing *Rubio*, 185 S.W.3d at 848); *see also McAllen Work Rehab. Ctr. v. Gomez*, No. 13–07–00466–CV, 2008 WL 2930306 (Tex.App.-Corpus Christi, July 31, 2008, pet. denied); *Omaha Healthcare Ctr., L.L.C. v. Johnson*, 246 S.W.3d 278 (Tex.App.-Texarkana 2008, pet. filed); *Christus Health v. Beal*, 240 S.W.3d 282 (Tex.App.-Houston [1st Dist.] 2007, no pet.); *Valley Baptist Med. Ctr. v. Stradley*, 210 S.W.3d 770, 775–76 (Tex.App.-Corpus Christi 2006, pet. denied); *Shults v. Baptist St. Anthony's Hosp. Corp.*, 166 S.W.3d 502, 505 (Tex.App.-Amarillo 2005, pet. denied); *Rogers v. Crossroads Nursing Serv., Inc.*, 13 S.W.3d 417, 420 (Tex.App.-Corpus Christi 1999, no pet.); *Shannon v. Law–Yone*, 950 S.W.2d 429, 437–38 (Tex. App.-Fort Worth 1997, writ denied). Leaving a nursing home resident without food and water may be an act separable from health care. While a nursing home does not merely provide shelter, food, and water, it does provide them, and its duties concerning food, water, and shelter are not governed solely by health care industry standards. Plaintiff does not allege a health care decision was made that Helm should be denied food and water; and plaintiff does not allege that Helm was given limited amounts of food and water. She makes one different allegation, an ex-

treme one asserting intentional conduct that requires no expert testimony or report as to the standard of care. To the extent the trial court denied appellant's motion to dismiss a claim possibly separable from health care, the trial court did not abuse its discretion.

This case presents a difficulty inherent in Chapter 74. Discovery is limited before a motion to dismiss is filed under the statute, and the record is therefore limited on appeal. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(s) (Vernon Supp.2008). The pleadings become paramount.[4] One of the claims made here is of an intentional injury. When presented with a pleading that asserts different causes of action, some claims involving health care and one that possibly does not, this Court should enforce the report requirement for health care claims and remand any separable claim to the trial court for further proceedings. We have done that before and should do that here. *See, e.g., Empowerment Options, Inc. v. Easley,* No. 09-06-148CV, 2006 WL 3239527, at *4 (Tex.App.-Beaumont, Nov. 9, 2006, pet.denied) (alternative "intentional abuse claim").

---

4. Appellant argues that we should consider the plaintiff's prior pleadings, because they clearly assert a health care liability claim. *See, e.g., Granek v. Tex. State Bd. of Med. Exam'rs,* 172 S.W.3d 761, 766 n. 2. (Tex.App.-Austin 2005, no pet.). Those pleadings have been abandoned by amendment. The question presented concerns the trial court's refusal, at this stage, to dismiss the claim currently pled.