Reversed and Remanded and Opinion
filed December 2, 2010.

 

In
The

Fourteenth
Court of Appeals



NO. 14-10-00149-CV



Texas Cypress
Creek Hospital, L.P. d/b/a Cypress Creek Hospital, Appellant 

v.

Marshelia
Hickman, Individually and as Personal Representative of the Estate of JaYMe R.
Cox, Appellee 



On Appeal from Probate
Court No. 3

Harris County, Texas

Trial Court
Cause No. 381,754-401



 

OPINION 

In this accelerated interlocutory appeal, appellant
Texas Cypress Creek Hospital, L.P. d/b/a Cypress Creek Hospital (“Cypress
Creek”), complains of the trial court’s denial of its motion to dismiss the
healthcare-liability claims of appellee Marshelia Hickman, individually and as
personal representative of the Estate of Jayme R. Cox, on the grounds that
Hickman’s expert reports do not satisfy the expert-report requirements of Texas
Civil Practice and Remedies Code chapter 74.  Hickman responds that she was not
required to provide expert reports because her claims are not
healthcare-liability claims, but instead are based on violations of the
Patient’s Bill of Rights as provided in Texas Health and Safety Code chapter
321.  We reverse and remand.

I

            On
April 26, 2007, Jayme Cox[1]
voluntarily admitted herself to Cypress Creek.  She had been diagnosed with bipolar
disorder, post-traumatic stress disorder, and attention deficit hyperactivity
disorder, and she was determined to be a suicide risk.  At the time of her
admission, Cox’s medications included Effexor XR, Eskalith, Adderall, Campral,
Zyprexa, Provera, Topamax, and Xanax.  After admission, her medications were
changed slightly and Ambien CR was added to her regimen.  Cox was also treated
with electroconvulsive therapy (“ECT”).

            During
her admission, Cox injured her left knee and, on May 2, she was prescribed hydrocodone
for the pain.  On May 3, she was also prescribed Oxycontin for one night, in
addition to her routine medications.  That evening, Cypress Creek staff checked
on Cox periodically—about every thirty minutes.  Around 2:00 a.m. on May 4, Cox’s
roommate found her lying “prone” in her bed, with her feet on the bed and her
head and upper body on the floor.  The roommate informed a nurse, who went to Cox’s
room and discovered that Cox had no pulse.  The nurse called a “Code Blue,”
started CPR, and called 911.  Other health care providers, including emergency
medical services personnel, also participated in the efforts to resuscitate Cox. 
The efforts were unsuccessful and Cox was declared dead at 3:04 a.m.  An
autopsy was later performed, and the toxicology results showed that Cox died as
a result of Zyprexa toxicity.

            In
July 2008, Hickman, Cox’s mother, sued Cypress Creek, alleging
healthcare-liability claims, common-law negligence, violations of the Mental
Health Code, violations of the Nursing Practice Act, wrongful death, and a
survival action.  Hickman had previously notified Cypress Creek that she was
asserting a “negligence health care liability claim” as defined by Civil
Practice and Remedies Code chapter 74, for “acts or omissions of negligence
and/or malpractice in the health care treatment and safety or lack of care,
treatment, or safety” administered to or for Cox, and that such negligence “proximately
resulted in the injuries and/or damages claimed herein.”

            In
her original petition, Hickman alleged generally that Cypress Creek had a duty
to provide “inpatient mental health care, physical health care, nursing care,
medication administration and electroshock treatment services.”  She also
alleged that Cypress Creek was negligent in its capacity as a health care
provider “by failing to assure that [Cox] was maintained in a safe environment,
such that she experienced a Zyprexa overdose and related respiratory and
cardiac arrest; and further that such failure was a violation of the relevant
professional standards for a reasonable and prudent mental health and substance
abuse treatment facility operating in Harris County, Texas.”  Hickman also
listed numerous specific acts and omissions by Cypress Creek which Hickman
alleged proximately caused Cox’s injuries, death, and resulting damages.  

            In
an effort to comply with chapter 74’s expert-report requirement, Hickman served
Cypress Creek with the report of Janet A. Grossman, Ph.D., PMHCNS, BC, FAAN,
and an autopsy report dated May 4, 2006.  See Tex. Civ. Prac. & Rem.
Code § 74.351(a).  In response, Cypress Creek filed a “Motion to Dismiss and
Objections and Challenges to the Sufficiency of the Reports and the
Qualifications of the Authors.”  In its motion, Cypress Creek argued that
Grossman’s report was insufficient because, among other things, Grossman was not
a physician and therefore she was not qualified to opine on causation.  See
id. §§ 74.351(r)(5)(C), 74.403.  Cypress Creek also argued that the autopsy
report was insufficient as an expert report because it failed to address the
applicable standard of care, the manner in which the care Cypress Creek failed
to meet the standards, and the causal relationship between that failure and the
injury, harm, or damages claimed.  See id. § 74.351(r)(6).

            Hickman
responded to Cypress Creek’s motion and filed a first amended petition in which
she purported to delete any cause of action related to medical malpractice. 
She contended that, because the case no longer included medical-malpractice
claims, Cypress Creek’s complaints that her expert reports were insufficient under
chapter 74 were now moot.  Cypress Creek replied that Hickman’s claims were in
substance healthcare-liability claims that could not be recast as a different
cause of action, and therefore the claims remained subject to the requirements
of chapter 74.  In a surreply, Hickman maintained that medical malpractice was
no longer a part of the case and Cypress Creek’s objections were therefore
moot; she also argued that her claims against Cypress Creek were governed by
Texas Health and Safety Code chapter 321, not Civil Practice and Remedies Code chapter
74, and therefore there was no need to provide any expert reports.

            After
a brief hearing, the trial court denied Cypress Creek’s motion to dismiss. 
This appeal followed.

II

            On
appeal, Cypress Creek raises five issues:  (1) Hickman’s claims are
healthcare-liability claims as defined by Texas Civil Practice and Remedies
Code section 74.001(a)(13); (2) these healthcare-liability claims cannot be
recast as a different cause of action in an effort to avoid the substantive and
procedural statutory provisions and requirements of chapter 74; (3) the
provisions of chapter 74 supersede in the event of any conflict with the provisions
of Health and Safety Code chapter 321 and therefore Hickman is required to
serve expert reports pursuant to Civil Practice and Remedies Code section
74.351(a); (4) Grossman’s report and the autopsy report are deficient because
they do not meet the definition of an “expert report” under section
74.351(r)(6) and controlling case law; and (5) because the documents Hickman
provided do not represent a good-faith effort, and because Hickman has
attempted to avoid meeting these requirements rather than make any effort to
provide sufficient expert reports, no thirty-day extension to cure should be
provided and Hickman’s claims should be dismissed.

            In
response, Hickman contends that her claims are civil-rights claims as
contemplated by chapter 321 of the Texas Health and Safety Code and therefore
are not healthcare-liability claims governed by chapter 74 of the Civil
Practice and Remedies Code.  Further, she contends, her claims are not “recast”
but are based on sound rules of statutory construction, as Health and Safety Code
chapter 321 is a separate civil-rights cause of action, it is not in conflict
with chapter 74, and it does not require that she file an expert report
pursuant to chapter 74.  Hickman concedes that Grossman’s report and the
autopsy report do not meet the definition of an “expert report” as defined by
section 74.351(r)(6), but argues that this concession is irrelevant as such a
report is not required in civil rights claims filed under chapter 321, and
therefore the trial court’s judgment should be affirmed.

III

A

            A
medical-malpractice plaintiff must timely serve on each defendant or each
defendant’s attorney one or more expert reports that set out (1) the applicable
standard of care, (2) the manner in which the defendant’s care failed to
satisfy that standard, and (3) the causal relationship between the defendant’s
failure and the injury or damages claimed.  See Tex. Civ. Prac. &
Rem. Code Ann. § 74.351(a), (r)(6).  The plaintiff may satisfy the statutory
requirements by serving reports of separate experts regarding different
physicians or health care providers or regarding different issues arising from
the conduct of a physician or health care provider.  Id. § 74.351(i). 
However, only a physician may give opinion testimony about the causal
relationship between the claimed injury, harm, or damages and the alleged
departure from the applicable standard of care.  See id. §
74.351(r)(5)(C); Kelly v. Rendon, 255 S.W.3d 665, 675 (Tex. App.—Houston
[14th Dist.] 2008, no pet.).

            We
review a trial court’s denial of a motion to dismiss under section 74.351 for
abuse of discretion.  Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,
46 S.W.3d 873, 875 (Tex. 2001); Group v. Vicento, 164 S.W.3d 724, 727
(Tex. App.—Houston [14th Dist.] 2005, pet. denied).  A trial court abuses its
discretion if it acts in an arbitrary or unreasonable manner without reference
to any guiding rules or principles.  Larson v. Downing, 197 S.W.3d 303,
304–05 (Tex. 2006); Mem’l Hermann Healthcare Sys. v. Burrell, 230 S.W.3d
755, 757 (Tex. App.—Houston [14th Dist.] 2007, no pet.).  To the extent
resolution of the issue before the trial court requires interpretation of the
statute itself, we apply a de novo standard.  Mokkala v. Mead, 178
S.W.3d 66, 70 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).

B

            Chapter
74 defines a healthcare-liability claim as:

a cause of action against a health care provider or
physician for treatment, lack of treatment, or other claimed departure from
accepted standards of medical care, or health care, or safety or professional
or administrative services directly related to health care, which proximately
results in injury to or death of a claimant, whether the claimant's claim or cause
of action sounds in tort or contract.

Tex.
Civ. Prac. & Rem. Code Ann. § 74.001(a)(13).  “Health care” is broadly
defined as “any act or treatment performed or furnished, or that should have
been performed or furnished, by any health care provider for, to or on behalf
of a patient during the patient’s medical care, treatment, or confinement.” 
Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(10).[2]  A cause of
action alleges a departure from accepted standards of medical care or health
care if the act or omission complained of is an inseparable part of the
rendition of medical or health care services.  See Diversicare Gen. Partner,
Inc., v. Rubio, 185 S.W.3d 842, 848 (Tex. 2005); Garland Comty. Hosp. v.
Rose, 156 S.W.3d 541, 543 (Tex. 2004).

            In
determining whether Hickman’s claims are healthcare-liability claims, we
examine the underlying nature of the claim and are not bound by the form of the
pleading.  Diversicare, 185 S.W.3d at 847; Sorokolit v. Rhodes,
889 S.W.2d 239, 242 (Tex. 1994).  We must focus on the essence of the claims
and consider the alleged wrongful conduct and the duties allegedly breached,
rather than the injuries allegedly suffered.  Diversicare, 185 S.W.3d at
851.  A healthcare-liability claim may not be recast as another cause of action
to avoid the requirements of chapter 74.  See id.  Therefore, we are not
bound by Hickman’s characterization of her claims.  See id.; Smalling
v. Gardner, 203 S.W.3d 355, 363 (Tex. App.—Houston [14th Dist.] 2005, pet.
denied).  We also consider whether expert testimony is necessary to prove
Hickman’s claims.  See Diversicare, 185 S.W.3d at 851.

            In
her original petition, Hickman expressly recognized the essence and nature of
her claims as healthcare-liability claims, and asserted that she had complied with
the notice requirements of chapter 74.  Further, the notice informed Cypress
Creek of the following:

            Pursuant to Civil Practice and Remedies Code
74.051, NOTICE is hereby given to you that our above named client the family of
Jamye Cox, is asserting a negligence health care liability claim, as defined by
said statute, against you.  This claim arises from the medical, surgical, or
other health care provided by you to Jamye Cox on, before, or about May 04,
2006.

And,
although Hickman amended her petition ostensibly to remove any
healthcare-liability claims, the factual allegations on which her claims are
based remained substantively unchanged.

            According
to the overview of the complaint contained in the amended petition, while Cox
was a patient, she sought Cypress Creek’s “professional expertise, judgment,
skill, competence, advice and treatment regarding inpatient mental health
services.”  The complaint further contains allegations that Cypress Creek,
through specific acts and omissions, failed to provide Cox the “operative
standard of care.”  According to Hickman, this alleged failure to provide the
operative standard of care proximately caused Cox’s injuries, subsequent
cardiac arrest, and death.  

            Among
the acts and omissions specifically alleged, Hickman contends that Cypress
Creek breached the standard of care by failing to:

·       
Provide
Cox a mental health treatment plan commensurate with the patient’s unique and
individualized needs;

·       
Provide
Cox mental health treatment in the least restrictive environment consistent
with the patient’s need for protection;

·       
Provide
Cox sufficient inpatient mental health facility staff supervision;

·       
Assure
Cox’s mental health records reflected the actual times that prescribed
medications were received;

·       
Assure
Cox treatment in a safe environment by failing to respond to Cox’s needs
commensurate with her mental health condition; assure Cox was treated in a safe
environment by failing to have a crash cart available and functional when
needed in an emergency; and

·       
Provide
Cox inpatient mental health nursing treatments commensurate with her needs and
the required statutory and regulatory standards. 

            Additionally,
Hickman alleges that Cypress Creek further breached the operative standard of
care by failing to:

·       
Assure
Cox received her prescribed medications in a timely manner;

·       
Assure
Cox was not provided excessive medications;

·       
Assure
Cox was not provided unnecessary medications;

·       
Assure
that treatment and prescriptions were documented correctly, and

·       
Assure
Cox was not a victim of polypharmacy.

Hickman
also contends Cypress Creek failed to assure Cox received “appropriate care”
after she exhibited post-ECT symptoms of swelling in her hand and a continuous
twitch in her eye.  And, Hickman alleges the nursing staff was “negligent per
se” pursuant to the Texas Nursing Practice Act.

            Looking
to the underlying nature or essence of these claims, Hickman’s factual
allegations and alleged acts and omissions necessarily implicate applicable
standards of care because Hickman’s complaints are directed to Cox’s treatment
or lack of treatment and claimed departures from accepted standards of health care,
or safety or professional or administrative services directly related to health
care allegedly proximately resulting in the damages of which she now
complains.  See Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13).  These
allegations concerning Cox’s mental-health treatment are an inseparable part of
the rendition of the medical or health care services Cypress Creek provided to
Cox.  See Diversicare, 185 S.W.3d at 847–48; Walden v. Jeffery,
907 S.W.2d 446, 448 (Tex. 1995) (per curiam); Smalling, 203 S.W.3d at
362–63.  And, as Hickman appears to concede,[3]
expert testimony will be necessary to prove Cypress Creek’s alleged lapses in
professional judgment and treatment.  See Diversicare, 185 S.W.3d at 851.


            Hickman
contends, however, that her chapter 321 claims sound in constitutional law and not
“in contract or tort” as contemplated in the chapter 74’s definition of a
healthcare-liability claim.  See Wichita Falls State Hosp. v. Taylor,
106 S.W.3d 692, 698–702 (Tex. 2003) (noting that section 321.003 of the Health
and Safety Code permits a person harmed by a mental-health facility’s violation
of the patient’s bill of rights to sue for damages and other relief, but
holding that statute did not waive sovereign immunity); see also O’Connor v.
Donaldson, 422 U.S. 563, 576 (1975) (holding state cannot constitutionally
confine a nondangerous individual who is capable of surviving safely in
freedom); Wyatt v. Aderholt, 503 F.2d 1305, 1314–15 (5th Cir. 1974)
(holding civilly committed mental patients have a constitutional right to treatment). 
Hickman also points to Article I, sections 15 and 15-a of the Texas
Constitution, which include provisions for the mentally ill relating to the
right to trial by jury.  See Tex. Const. art. I, §§ 15, 15-a.  Hickman
argues there are no similar constitutional protections for persons receiving
general health care, and these constitutional underpinnings control over the substantive
or procedural requirements of chapter 74.  Additionally, Hickman argues that a claim
brought under chapter 321 for a patient’s-bill-of-rights violations differs
from a medical malpractice claim in numerous respects, and argues that these
differences evidence a legislative intent to provide a wholly separate statutory
scheme that trumps chapter 74.

            Although
she posits a variety of arguments to support her position, Hickman may not use
artful pleading to avoid chapter 74’s requirements when the essence of the suit
is a healthcare-liability claim.  See Garland Comty. Hosp., 156
S.W.3d at 543; Smalling, 203 S.W.3d at 363.  Further, Hickman may not
avoid the requirements of chapter 74 by carrying forward factual allegations
that in essence assert healthcare-liability claims, while deleting reference to
Chapter 74 and changing the labels for the claims.  See Med. Hosp. of
Buna Tex., Inc. v. Wheatley, 287 S.W.3d 286, 291–92 (Tex. App.—Beaumont
2009, pet. denied); NCED Mental Health, Inc. v. Kidd, 214 S.W.3d 28,
36–37 (Tex. App.—El Paso 2006, no pet.).  Hickman’s appellate arguments that
her claims do not sound in contract or tort conflict with her live pleading, in
which she asserts that Cypress Creek’s alleged violations of the Mental Health
Code, the Health and Safety Code, and the Nursing Practice Act constitute
“negligence” or “negligence per se.”  Further, in asserting a private cause of
action under section 321.003 of the Health and Safety Code, Hickman’s
allegations reflect that the essence of her complaints is that Cypress Creek
breached duties it allegedly owed to Cox as a mental health care provider:  

Defendant, Cypress Creek Hospital, owed Jamye R. Cox, the
duty to provide proper inpatient mental health care commensurate with the
licensing laws and rules promulgated thereunder, and relative to her mental
health condition, and in the exercise of that duty the Defendant Cypress
Creek was required to provide such reasonable care as Cox[’s] condition
which was known, or should have been known, and required, as stated in such
state licensing laws and rules promulgated thereunder . . . includ[ing] the
duty to guard against the foreseeable consequences of the patient’s injury,
condition, or treatment that brought her to the facility in the first
instance.  (emphasis added).

Thus,
even though Hickman’s claims relate to mental-health treatment rather than
general medical health care, the above-italicized language, as well as the
other allegations in the amended petition discussed above, fall within chapter
74’s definition of “health care” as “any act or treatment performed or
furnished, or that should have been performed or furnished, by any health care
provider for, to or on behalf of a patient during the patient’s medical care,
treatment, or confinement.”  Id. § 74.001(10).  

            Our
conclusion that chapter 74 encompasses mental-health claims is supported by
case law and by chapter 74.  In Diversicare, a nursing home was sued for
allegedly failing to provide adequate supervision and nursing services that
proximately caused a resident’s sexual assault by another resident.  See
Diversicare, 185 S.W.3d at 845.  In concluding that the resident’s claims
were healthcare-liability claims governed by chapter 74, the supreme court
noted that “[t]he level and types of health care services provided vary with
the needs and capabilities, both physical and mental, of the patients.” 
Id. at 850 (emphasis added).  The supreme court further recognized that
“[t]he nature and intensity of care and treatment, including professional
supervision, monitoring, assessment, quantities and types of medication,
and other medical treatment are judgments made by professionals trained and
experienced in treating and caring for patients and the patient populations in
their health care facilities.”  Id. (emphasis added); see also See
Fudge v. Wall, 308 S.W.3d 458, 461–62 (Tex. App.—Dallas 2010, no pet.)
(“Nothing in section 74.001 distinguishes between mental and physical health
care.”); Mike Norgaard, LPC v. Pingel, 296 S.W.3d 284, 288 (Tex.
App.—Fort Worth 2009, no pet.) (“Health care includes the care of mental
conditions.”).

            As
discussed above, Hickman’s complaints are directed to Cox’s treatment or lack
of treatment and claimed departures from accepted standards of medical care, health
care, or safety or professional or administrative services directly related to the
mental-health care Cox received while at Cypress Creek.  See Tex. Civ.
Prac. & Rem. Code Ann. § 74.001(13).  Other courts have reached similar
conclusions when confronted with claims against mental-health facilities or
treatment.  See Broxterman v. Carson, 309 S.W.3d 154, 156, 158 (Tex.
App.—Dallas 2010, pet. denied) (holding claims against hospital and others
relating to patient’s adverse reaction to prescription medication given against
her will after she cut her wrist, including alleged violations of civil rights,
Texas statutes, and other acts were healthcare-liability claims requiring
expert report); Groomes v. USH of Timberlawn, Inc., 170 S.W.3d 802,
806–07 (Tex. App.—Dallas 2005, no pet.) (holding claims against mental hospital
for false imprisonment, intentional infliction of emotional distress, and abuse
of process when mental-health facility refused to discharge fourteen-year-old
patient at mother’s request were healthcare-liability claims); Parker v.
CCS/Meadow Pines, Inc., 166 S.W.3d 509, 512–13 (Tex. App.—Texarkana 2005,
no pet.) (holding claims against private mental hospital for injuries related
to restraints used on patient, including claims that hospital violated
patient’s rights as set out in the Patient’s Bill of Rights, were healthcare-liability
claims).  Therefore, Hickman’s claims are healthcare-liability claims subject
to the statutory requirements of chapter 74.[4]


C

            Generally,
if the plaintiff fails to timely serve an expert report within the statutory
deadline the trial court must dismiss the lawsuit with prejudice.  See Tex.
Civ. Prac. & Rem. Code § 74.351(b).  But if the plaintiff has timely
served a report on the defendant, the trial court cannot dismiss the lawsuit
unless the report does not represent an objective good-faith effort to comply
with the statutory requirements for such a report.  See id. §
74.351(l).  If an expert report has not been timely served because “elements of
the report are found deficient,” the court may grant one thirty-day extension
to the plaintiff to cure the deficiency.  Id. § 74.351(c). 

            Cypress
Creek contends that the documents Hickman provided do not represent a good-faith
effort to comply with chapter 74’s expert-report requirement.  Specifically, Cypress
Creek contends that Grossman’s report is inadequate because, among other
things, she is not a physician and is not qualified to opine on causation.  See
Kelly, 255 S.W.3d at 675.  And, the autopsy report does not equate to the
provision of the statutorily mandated expert report because it does not include
a fair summary of an expert’s opinions regarding the applicable standard of
care, the manner in which the care provided failed to meet the standards, and
the causal relationship between that failure and the injury, harm, or damages
claimed.  See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6);
Maxwell v. Seifert, 237 S.W.3d 423, 427 (Tex. App.—Houston [14th Dist.]
2007, pet. denied) (medical records do not constitute an expert report under
section 74.351).  Further, Cypress Creek argues that because Hickman has made
no further effort to comply, but has instead attempted to avoid the
expert-report requirement, her claims should be dismissed without the
possibility of a thirty-day extension.  

            In
response, Hickman does not ask that, if we determine she was required to comply
with chapter 74’s expert-report requirements, her claims be remanded to allow
the trial court to consider whether to grant an extension.  Instead, she
maintains, as she did below, that she is simply not required to provide any
expert reports because chapter 74 does not apply to her claims.  We have
concluded to the contrary, however, and in this circumstance, agree with
Cypress Creek that dismissal is warranted.  See Hopkins County Hosp. Dist. v.
Ray, No. 06-08-00129-CV, 2009 WL 454338 (Tex. App.—Texarkana Feb. 24, 2009,
no pet.) (mem. op.) (dismissal was warranted when plaintiff served report
written by nurse and then took position that no expert report was required on
causation). 

*
* *

            Accordingly,
we reverse the trial court’s order denying Cypress Creek’s motion to dismiss
and remand the cause to the trial court for entry of a judgment dismissing
Hickman’s claims with prejudice for failing to furnish an expert report as
required by section 74.351 of the Civil Practice and Remedies Code.  In
accordance with section 74.351(b)(1) of the Civil Practice and Remedies Code, the
trial court shall award reasonable attorney’s fees and costs of court incurred
by Cypress Creek.

 

                                                                                    

                                                                        /s/        Jeffrey
V. Brown

                                                                                    Justice

 

 

 

Panel consists of Justices Anderson,
Frost, and Brown.

 









[1]
Jayme’s first name is sometimes spelled “Jamye” in the record, including in
Hickman’s amended petition, Grossman’s report, and the autopsy report.  Because
the trial court’s order being appealed and the parties’ appellate briefs refer
to “Jayme,” however, we will do the same.





[2]  In Chapter 74, the list of
healthcare providers includes “a health care institution,” which is further
defined to include “a hospital.”  Tex. Civ. Prac. & Rem. Code Ann. §
74.001(11), § 74.001(12)(A)(vii).  “Hospital” is defined as “a licensed public
or private institution . . . licensed under Chapter 577, Health and Safety
Code.”  Id. § 74.001(a)(16).  Chapter 577 governs private mental
hospitals and other mental-health facilities.  Further, courts have recognized
that Chapter 74’s list of healthcare providers is not exclusive.  See
Christus Health v. Beal, 240 S.W.3d 282, 286–87 (Tex. App.—Houston [1st
Dist.] 2007, no pet.) (holding that a drug and alcohol treatment center was a
healthcare provider even though not expressly listed in statutory definition). 
Thus, Cypress Creek falls within the statutory definition of a healthcare
provider under Chapter 74.  See id. § 74.001(a)(12)(A).





[3]
In her appellate brief, Hickman states that she “recognizes that at some point
she will likely require an expert to determine whether or not” Cypress Creek
violated Cox’s patient rights.  But she insists that no expert report is
required because her claims are not healthcare-liability claims.





[4]
Our holding is based on the specific allegations in Hickman’s pleadings, and
therefore our opinion should not be interpreted as holding that all claims
related to inpatient mental health facilities are necessarily
healthcare-liability claims.  Nor is it necessary in this case to consider, and
we do not consider, whether a healthcare-liability claim and a claim under
chapter 321 are mutually exclusive.