# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00334-CV

### Chauncey Drewery, Appellant

### v.

### Adventist Health System/Texas, Inc.; Metroplex Health System d/b/a Metroplex Hospital; Barbara Wiedebusch, R.N.; Kristien Williams, R.N.; Betty S. Thorp, R.N.; and Warren Voegele, Appellees

### FROM THE DISTRICT COURT OF BELL COUNTY, 169TH JUDICIAL DISTRICT NO. 235,885-C, HONORABLE RICK MORRIS, JUDGE PRESIDING

## O P I N I O N

Appellant Chauncey Drewery filed suit against appellees Barbara Wiedebusch, R.N., and Kristien Williams, R.N., alleging causes of action for assault and intentional infliction of emotional distress. He alleged the same causes of action against Wiedebusch and Williams' colleagues, appellees Betty S. Thorp, R.N., and Warren Voegele, under a theory of "aider and encourager" liability, and against their employer, Adventist Health System/Texas, Inc. and Metroplex Health System d/b/a Metroplex Hospital (collectively, "the Hospital") under a theory of vicarious liability. All defendants filed motions to dismiss Drewery's claims against them under chapter 74 of the civil practice and remedies code, asserting that they were health care liability claims in support of which Drewery had failed to file a medical expert report. The trial court granted the defendants' motions and dismissed all of Drewery's claims with prejudice. Drewery appeals, arguing that the

trial court erred in characterizing his assault and intentional infliction of emotional distress claims as health care liability claims subject to the expert-report requirement. We will reverse the trial court's order and remand the cause for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Drewery, who was employed by the Hospital as a surgical technician, was admitted as a patient at the Hospital to undergo a tonsillectomy. Registered nurses Barbara Wiedebusch and Kristien Williams, who were at the time Drewery's coworkers, were assigned to assist at his surgery. In preparation for the procedure, Drewery received general anesthesia. According to Drewery's pleadings, at some time "during pre-surgery preparation and during surgery," Wiedebusch and Williams intentionally assaulted him by (1) painting his fingernails and toenails with pink nail polish, (2) defacing his body by writing "Barb was here" and "Kris was here" on the bottoms of his feet, and (3) wrapping his thumb with tape. Only later, of course, did Drewery learn of these actions.

In addition to the assault claim, Drewery alleged causes of action against Wiedebusch and Williams for intentional infliction of emotional distress, claiming that the incident and its aftermath created a hostile work environment that caused him severe emotional distress. He asserted that when he returned to work after the surgery, the individual defendants continued to tease him and make jokes about his sexuality, telling other hospital employees that he is gay, even though he is not, and that they had painted him to look "like a little girl." Regarding the taping of his thumb, Drewery argued that the significance of this act was to call attention to his "very private, but embarrassing habit" of sucking his thumb, which Wiedebusch was aware of and had exploited in an attempt to humiliate him. He alleged that he experienced nausea and loss of sleep and appetite as a result of

2

feeling that he had been violated by his coworkers and from not knowing what else might have been done to him while he was under anesthesia. According to his pleadings, Drewery suffered further emotional distress after administrative personnel at the Hospital ignored his complaints regarding the assault, failed to acknowledge any wrongdoing, and failed to punish the perpetrators.

Drewery brought the same causes of action for assault and intentional infliction of emotional distress against Betty Thorp, a surgical technician, and Warren Voegele, a nurse anesthetist, claiming that both of them had been present in the operating room before and during his surgery, yet neither of them had intervened to stop the assault; in fact, Drewery alleged, Thorp and Voegele had aided and encouraged Wiedebusch and Williams by joking and laughing. Drewery also brought these claims against the Hospital under the doctrine of respondeat superior, arguing that the individual defendants had been acting in the course and scope of their employment.[1]

Based on the foregoing allegations, Drewery sought damages for mental anguish and emotional distress, humiliation, embarrassment, damage to his reputation, loss of enjoyment of life, and court costs. He also sought exemplary damages, arguing that the acts against him had been committed with malice and that the Hospital had authorized, ratified, and approved the assaultive conduct of its employees.[2]

---

[1] Drewery specified in his petition that he was not alleging causes of action for negligent hiring, retaining, training, or supervision of any of the individuals involved.

[2] *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.005(b)(1) (West 2008) (providing that although court may not award exemplary damages against defendant because of criminal act of another, it may do so if criminal act is committed by employee of defendant); *id.* § 41.005(c)(3), (4) (employer may be liable for punitive damages only if agent was employed in managerial capacity and was acting within scope of employment, or employer ratified or approved act).

Drewery filed his original petition on April 27, 2009. Thereafter, the defendants filed motions to dismiss in which they argued that Drewery's claims related to the provision of health care and were, therefore, health care liability claims subject to the mandatory expert-report requirement in chapter 74 of the civil practice and remedies code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (West Supp. 2010) ("In a health care liability claim, a claimant shall, not later than the 120th day after the date the original petition was filed, serve on each party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted."); *see also id.* § 74.351(b)(2) ("If, as to a defendant physician or health care provider, an expert report has not been served within the period specified by Subsection (a), the court, on the motion of the affected physician or health care provider" shall enter an order that "dismisses the claim with respect to the physician or health care provider, with prejudice to the refiling of the claim."). It is undisputed that Drewery did not serve any defendant with an expert report.

On March 18, 2010, after the defendants' motions to dismiss had been filed but before the March 26, 2010 hearing on the motions, Drewery filed his first amended petition. In it, he asserted the same claims and theories of liability, but deleted references that had appeared in his original petition to medical risks that the individual defendants' conduct had posed to him as a surgical patient.[3] He also responded to the defendants' assertions that his claims were health-care

_____

[3] Drewery's original petition included several paragraphs under the heading "Intentional Infliction of Emotional Distress" that were omitted from his first amended petition, the live pleading in this case:

liability claims subject to the expert-report requirement in chapter 74. After the hearing, the sitting judge recused himself sua sponte, and the case was reassigned to a different judge. Following rehearing of the motions to dismiss on May 14, 2010, the trial court granted the defendants' motions and dismissed all of Drewery's claims with prejudice. This appeal followed.

## DISCUSSION

The issue in this case is whether the trial court properly characterized Drewery's claims as health care liability claims. Only health care liability claims are subject to the expert-report requirement in section 74.351 of the civil practice and remedies code. *See id.* § 74.351(a). A health care liability claim is defined as a claim "against a health care provider or physician for treatment,

---

The actions described above, which were directed towards Plaintiff, were intentional. Defendants' conduct involved an extreme degree of risk considering the probability and magnitude of potential harm to Plaintiff and all Defendants proceeded with conscious indifference to the rights, safety and welfare of Plaintiff despite all Defendants' actual, subjective awareness of the risk involved.

The acts of all the Defendants described above were extreme and outrageous, in that all Defendants were in positions that required them to provide medical care and treatment to Plaintiff. Plaintiff was under general anesthesia and muscular paralysis and was physically incapable of defending himself against this assault committed by the very professionals charged with protecting him from these horrific actions.

Further, these actions were taken either prior to or during a surgical procedure in which Plaintiff was given anesthesia. During this type of surgical procedure, it is imperative for the treating surgeons, nurses and staff conducting the procedure to be able to see the patient's fingernails and toenails (to determine if cyanosis is present), and with them covered in pink polish this was not possible. During the surgery, any number of serious or lethal events could have happened, but the surgeons, nurses and staff would have missed the indications because Plaintiff's nails were painted and in fact, post-surgery, Plaintiff did develop a surgical hemorrhage, which required emergency surgery to control the bleeding.

5

lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant." *Id.* § 74.001(a)(13). Under this definition, the Texas Supreme Court has explained, a health care liability claims consists of three elements: (1) a physician or health care provider must be the defendant; (2) the suit must be about the patient's treatment, lack of treatment, or some other departure from accepted standards of medical care or health care or safety; and (3) the defendant's act, omission, or other departure must proximately cause the patient's injury or death. *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 662 (Tex. 2010) (plurality op.).

In determining whether a claim is a health care liability claim, a question of law that we review de novo, we look to the nature and essence of the claim, rather than the way it was pleaded. *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 847 (Tex. 2005); *see Marks*, 319 S.W.3d at 663 (explaining principles of statutory construction). When the essence of the suit is a health care liability claim, a party cannot avoid the requirements of the statute through artful pleading. *Yamada v. Friend*, No. 08-0262, 2010 WL 5135334, at *3 (Tex. Dec. 17, 2010); *Garland Cmty. Hosp. v. Rose*, 156 S.W.3d 541, 543 (Tex. 2004). In a case where "the gravamen or essence" of the cause of action is a health care liability claim, the Texas Supreme Court has warned that "allowing the claim to be split or spliced into a multitude of other causes of action with differing standards of care, damages, and procedures would contravene the Legislature's explicit requirements." *Yamada*, 2010 WL 5135334, at *5; *see also Diversicare Gen. Partner*, 185 S.W.3d at 854 (holding claimant could not allege premises-liability claim independent of health care liability

6

claim).  The defendants thus asserted that Drewery's claims were actually health care liability claims recast as intentional torts.

A claim is a health care liability claim if it implicates standards of medical care by alleging a negligent act or omission that is "an inseparable or integral part of the rendition of medical services."  *Marks*, 319 S.W.3d at 664 (plurality op.); *see Diversicare Gen. Partner*, 185 S.W.3d at 848-49.  In determining whether a claim is inseparable from the rendition of medical care, we consider factors such as whether a specialized standard in the health care community applies to the alleged circumstances and whether the alleged negligent act involves medical judgment related to the patient's care or treatment.  *See Diversicare*, 185 S.W.3d at 847-52.  The necessity of expert testimony from a medical professional to prove a cause of action may also be an important factor in determining whether a cause of action is an inseparable part of the rendition of medical services.  *Id.* at 851.

In both their motions to dismiss and their briefs to this Court, the appellees relied on a statement from Drewery's original petition that the painting of his fingernails posed a risk to him as a surgical patient because "it could have" prevented the doctors and surgical staff from detecting whether he had developed cyanosis (a discoloration of the skin and mucous membrane due to deficient oxygenation of the blood).  Based on this statement, which was deleted from his live petition, the appellees assert that the true nature of Drewery's suit is a health care liability claim based on the individual defendants' departures from accepted standards of health care when they were supposed to be preparing him for and monitoring him during surgery.  Besides addressing this superseded allegation, the defendants otherwise generally assert that the actions identified in

7

Drewery's petition "were done while [Defendants were] providing health care to Plaintiff as a health care provider [sic], and were clearly an inseparable part of Defendants' rendition of health care services to him." They do not respond, however, to other facts alleged in Drewery's petition regarding the writing on his feet and taping of his thumb, nor to any of the events reportedly occurring after he returned to work that formed the basis of his claims for intentional infliction of emotional distress.

On appeal, Drewery argues that neither his assault nor his intentional infliction of emotional distress claims are health care liability claims. We agree that neither of these claims, as pleaded in either his original petition or his amended petition, are health care liability claims. Specifically, neither cause of action (1) required expert testimony, (2) implicated any community standards of care, (3) involved hiring, training, supervision, or any other independent act on the part of the Hospital, or (4) related to a medical or health care procedure. Indeed, many of the factual allegations asserted in his petition did not even take place while he was a patient under the defendants' care, but occurred after the fact in the context of workplace discrimination. Even those allegations that concern the conduct of health care providers before and during the surgery, however, do not address any negligent acts or omissions related to his care. Therefore, Drewery's claims do not satisfy the second prong of the *Marks* test because they do not concern his treatment, lack of treatment, or some other departure from accepted standards of medical care or health care or safety.[4]

---

[4] The defendants are mistaken in relying on the sole fact that they were "acting" as health care providers at the time the alleged assault occurred, which improperly conflates the first and second elements of the *Marks* test. The fact that the actions were taken by a physician or health care provider does not necessarily mean that the suit is about a patient's treatment, lack of treatment, or other departure from accepted standards of health care. Otherwise, *every* claim based on the conduct

In arguing the contrary, the defendants urge that we must consider allegations contained in Drewery's original petition. Their position contradicts the general rule that, once a plaintiff properly amends his petition, the factual allegations contained therein are superseded and are no longer part of the pleading on record. *See* Tex. R. Civ. P. 65; *see FKM P'ship, Ltd. v. Board of Regents of Univ. of Houston Sys.*, 255 S.W.3d 610, 633 (Tex. 2008) (noting that because our rules provide that amended pleadings and their contents take place of prior pleadings, "causes of action not contained in amended pleadings are effectively dismissed at the time the pleading is filed"). They provide no argument or authority suggesting why this rule should be abandoned here.

Even considering Drewery's original petition in analyzing his pleadings, however, we would still conclude that he has not alleged health care liability claims. Of paramount importance is the fact that Drewery did not plead damages based on any physical injury resulting from a defendant's provision of medical treatment, lack of treatment, or other departure, as required by the third element of the *Marks* test. He did not allege that he was physically harmed by the painting of his fingernails, nor that he actually developed cyanosis, which would have been detected but for the defendants' conduct. Nor has he pleaded any emotional or psychological injury that he suffered as a result of the provision of medical treatment, lack of treatment, or other departure from accepted standards of medical or health care or safety (e.g., that he suffered emotional distress from knowing he could have developed cyanosis and it might not have been discovered). On the contrary, Drewery is not attempting to recover for the medical negligence of any defendant; the only damages

---

of a physician or health care provider in a health-care setting would be subject to the expert-report requirement. If that had been the legislature's intent, it would have defined a "health care liability claim" to be any claim against a physician or health care provider in a medical or health care setting.

he has sought and the only damages that are supported by his pleadings relate to the *intentional* torts that he has alleged.

Moreover, the same facts that Drewery alleged in his original petition form the basis of the claims he asserted in his amended petition. In amending his petition, Drewery did not delete any *facts*—only the legal conclusions that he had drawn from those facts. Drewery's initial decision to identify a potentially harmful consequence of the tortious conduct alleged in his petition in order to bolster his chances of recovering punitive damages does not control our analysis of whether the conduct itself constitutes a health care liability claim. Indeed, one can imagine that any intentional tort committed against a patient during a medical procedure or in a health-care setting might have consequences that could in some way implicate medical negligence. If, for example, a nurse were to repeatedly stab a surgical patient with a scalpel when he or she was supposed to be monitoring the patient's blood pressure, one could reasonably argue that the nurse's conduct increased the likelihood that the patient's blood pressure would drop to dangerously low levels, thereby implicating the duty of care owed by a nurse during a surgical procedure. But if the essence of the plaintiff's suit—and the injury for which he seeks damages—is the intentional assault, the reviewing court would be wrong to ignore the intentional conduct and instead focus on the potentially infinite secondary consequences that might also have resulted in the context of the medical or health-care procedure.

Drewery's claims are not health care liability claims impermissibly "recast" as intentional torts. The gravamen of his suit is that he suffered humiliation as a result of the intentional physical violation of his body by his co-workers while he was unconscious, and that he continued to feel extreme embarrassment after the assault because of negative impact on his work

10

environment. Although these events took place in a hospital, Texas courts have consistently recognized that not every cause of action for injuries arising in a health care setting is a health care liability claim—even in cases where the defendant was alleged to have been acting in the course of his employment. *See Nexus Recovery Ctr., Inc. v. Mathis*, No. 05-09-00273-CV, 2011 WL 454504, at *3, 6 (Tex. App.—Dallas Feb. 10, 2011, no pet. h.) (sexual exploitation and therapeutic deception claims against mental health services facility by former patient were not health care liability claims, even though relationship between claimant and counselor arose as result of claimant receiving counseling services at facility) (citing *Marks*, 319 S.W.3d at 664); *see also Appell v. Muguerza*, 329 S.W.3d 104, 111-16(Tex. App.—Houston [14th Dist.] Nov. 23, 2010, pet. filed) (patient's claim that doctor attacked her and her mother during medical examination was not health care liability claim because alleged conduct was not inseparable part of rendition of medical services, nor was it based on departure from accepted standard of safety); *Wasserman v. Gugel*, No. 14-09-00450-CV, 2010 WL 1992622, at *3 (Tex. App.—Houston [14th Dist.] May 20 2010, pet. granted) (op. on reh'g) (patient's claim that doctor sexually assaulted her during surgical consult was not health care liability claim, as it would "defy logic to suggest that a sexual assault [such as that alleged by Gugel], is an inseparable part of the rendition of medical care or a departure from accepted standards of health care" (quoting *Holguin v. Laredo Reg'l Med. Ctr., L.P.*, 256 S.W.3d 349, 353 (Tex. App.—San Antonio 2008, no pet.) (holding same)); *Jones v. Khorsandi*, 148 S.W.3d 201, 206 (Tex. App.—Eastland 2004, pet. denied) (patient's claims for assault, battery, and intentional infliction of emotional distress based on doctor's "unwanted and offensive sexual advances" were not health care liability claims because they did not involve breach of applicable standards of care and were not

inseparable part of rendition of medical services). In this case, as in the cases cited, the conduct at issue is not an "inseparable or integral part" of the defendants' rendition of medical or health care services even though some of the acts in question took place immediately before, or even during, a medical procedure and were performed by medical and health-care personnel.

The defendants' attempt to analogize the present case to *Vanderwerff, D.C. v. Beathard*, 239 S.W.3d 406 (Tex. App.—Dallas 2007, no pet.), is unpersuasive. In *Vanderwerff*, the plaintiff alleged that she was assaulted during a chiropractic examination when the defendant doctor "rubbed her genitals." The Dallas Court of Appeals concluded that her pleadings, which stated that she was seeking treatment for pain in an area running from her knee to her upper thigh, raised questions that could not be answered without reference to the standard of care required of a chiropractic provider. *Id.* at 409. In the present case, however, no reasonable argument could be made that the nurses' alleged conduct—which included painting Drewery's nails and writing their names on his feet—was a necessary part of preparing him for surgery to remove his tonsils.

The focus of the factual allegations in Drewery's petition is an alleged assault based on offensive contact while he was under general anesthesia before or during a surgical procedure. This type of civil assault occurs if a person "intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative." *See* Tex. Penal Code Ann. § 22.10(a)(1) (West Supp. 2010). According to his pleadings, Wiedebush and Williams intentionally and knowingly painted his fingernails and toenails with pink polish, wrote on the bottoms of his feet, and wrapped tape around his thumb, knowing that such contact would be offensive and provocative. In the aftermath of the

incident, they also allegedly spread rumors about his sexuality and made disparaging comments about him to his co-workers and superiors, which he claims caused him such severe emotional distress that eventually he felt compelled to leave his job. *See Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004) (listing elements of claim for intentional infliction of emotional distress). No expert testimony from a medical or health care professional is needed to determine the propriety of their actions, as no professional judgment or expertise is implicated in determining whether the elements of the alleged assault and intentional infliction of emotional distress claims are met. The same is true as to Thorp and Voegele, who were named as defendants because they were present during the incident and allegedly encouraged Wiedebusch and Williams in the commission of the assault—not because of any duty arising from their roles as health care providers.

Further, because Drewery alleged that Wiedebusch, Williams, Thorp, and Voegele were acting in the course and scope of their employment, the Hospital's liability is purely a question of vicarious liability; it does not concern any act or treatment performed or furnished, or that should have been performed or furnished, by the Hospital during Drewery's medical care, treatment, or confinement. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(10) (defining "health care").[5]

---

[5] It is important to note that Drewery has not asserted that the Hospital was negligent in its own right for failing to adequately supervise or train its employees. The supreme court has indicated that claims for negligent hiring, training, or supervision against a health care facility necessarily implicate accepted standards of safety and would therefore be considered health care liability claims under the statutory definition. *See Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 855 (Tex. 2005). Indeed, Drewery has not alleged nor sought to recover under any theories of negligence at all. *Cf. Yamada v. Friend*, No. 08-0262, 2010 WL 5135334, at *4-5 (Tex. Dec. 17, 2010) (cautioning against allowing same underlying facts to give rise to both health care liability claims

13

Because Drewery did not plead any health care liability claims, we hold that he was not required to furnish an expert report. We sustain his issue on appeal.

## CONCLUSION

Having sustained Drewery's issue on appeal, we reverse the trial court's judgment and remand the cause for further proceedings.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Henson and Goodwin
   Dissenting Opinion by Justice Goodwin

Reversed and Remanded

Filed:   May 20, 2011

---

and claims based on breaches of ordinary standards of care); *see also Turtle Healthcare Group, L.L.C. v. Linan*, No. 09-0613, 2011 WL 711102, at \*2-3 (Tex. Feb. 25, 2011) (same).