# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00031-CV

**Rita Henley, Appellant**

**v.**

**Scott & White Memorial Hospital; Scott, Sherwood & Brindley Foundation; and Scott & White Continuing Care Hospital and Staff, Appellees**

**FROM THE DISTRICT COURT OF BELL COUNTY, 169TH JUDICIAL DISTRICT
NO. 241,519-C, HONORABLE GORDON G. ADAMS, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

This is an appeal from a district court judgment dismissing, with prejudice, a suit against health care providers for failure to file the expert report required by the Texas Medical Liability Act (TMLA). *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (West 2011). The appellant, Rita Henley, who has been pro se throughout the proceedings, sued Scott & White Memorial Hospital; Scott, Sherwood & Brindley Foundation; and "Scott & White Continuing Care Hospital and Staff" (collectively, Scott & White) seeking damages related to the death of her husband, Sammy Henley, who had been a patient at the continuing care hospital.[1] On appeal, Henley does not dispute that she failed to file an expert report as required under the TMLA, but insists that she was not required to do so because her claims were based upon res ipsa loquitur, statutory

---

[1] Henley represents that she is the administrator of her late husband's estate.

violations, the wrongful death statute, and "ordinary negligence" rather than "medical malpractice." The TMLA and established precedent mandate that we affirm the district court's judgment.

In general, we apply an abuse-of-discretion standard of review to trial court orders granting or denying a motion to dismiss for failure to comply with the TMLA's expert-report requirement, ascertaining whether the trial court has acted in an "arbitrary" or "unreasonable" manner or "without reference to any guiding rules or principles." *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); *see American Transitional Care Ctrs. v. Palacios*, 46 S.W.3d 873, 877 (Tex. 2001). However, the Legislature has imposed on trial courts a mandatory duty to dismiss (i.e., deprived them of any discretion not to do so) where a plaintiff has failed to serve an expert report within the 120-day statutory period. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b); *Scoresby v. Santillan*, No. 09-0497, 2011 Tex. LEXIS 516, at *21-22 (Tex. July 1, 2011) (citing *Ogletree v. Matthews*, 262 S.W.3d 316, 320-21 (Tex. 2007)). Consequently, the district court was required to dismiss Henley's suit, and did not err in doing so, if the TMLA required that she serve an expert report. Resolution of that issue turns on construction of the TMLA, a question of law that we review de novo. *See Drewery v. Adventist Health Sys./Tex., Inc.*, 344 S.W.3d 498, 501-02 (Tex. App.—Austin 2011, pet. filed) (citing *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 663 (Tex. 2010) (plurality op.)); *Carroll v. Humsi*, 342 S.W.3d 693, 696 (Tex. App.—Austin 2011, no pet.).

Our primary objective in statutory construction is to give effect to the Legislature's intent. *See State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). We seek that intent "first and foremost" in the statutory text. *Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 85 (Tex. 2006).

2

"Where text is clear, text is determinative of that intent." *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009) (op. on reh'g) (citing *Shumake*, 199 S.W.3d at 284; *Alex Sheshunoff Mgmt. Servs. v. Johnson*, 209 S.W.3d 644, 651-52 (Tex. 2006)). We consider the words in context, not in isolation. *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002). We rely on the plain meaning of the text, unless a different meaning is supplied by legislative definition or is apparent from context, or unless such a construction leads to absurd results. *See Entergy Gulf States, Inc.*, 282 S.W.3d at 437; *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008); *see also* Tex. Gov't Code Ann. § 311.011 (West 2005) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage," but "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."). We also presume that the Legislature was aware of the background law and acted with reference to it. *See Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990). We further presume that the Legislature selected statutory words, phrases, and expressions deliberately and purposefully. *See Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010); *Shook v. Walden*, 304 S.W.3d 910, 917 (Tex. App.—Austin 2010, no pet.).

The TMLA's expert-report requirement applies to a "claimant" "[i]n a health care liability claim" (HCLC). *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). A "claimant" is "a person, including a decedent's estate, seeking or who has sought recovery of damages in a health care liability claim." *Id.* § 74.001(a)(2) (West 2011). Therefore, whether Henley was required to

3

provide an expert report depends upon whether she is seeking damages in an HCLC against Scott &

White.  A "health care liability claim" is:

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

*Id.* § 74.001(a)(13).  This definition consists of three components:  (1) a physician or health care

provider must be the defendant, (2) the "cause of action" must be about a patient's "treatment, lack

of treatment, or other claimed departure from accepted standards of medical care, or health care, or

safety or professional or administrative services directly related to health care," and (3) that act,

omission, or other departure by the defendant must be the alleged proximate cause of the claimant's

professed injury.  *Marks*, 319 S.W.3d at 662 (discussing former Tex. Rev. Civ. Stat. art. 4509i,

*repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884);

*Drewery*, 344 S.W.3d at 501; *see* Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13).  Only the

second element is at issue in this case.

Under the second element, our focus is on the nature of Henley's "cause of action"

against Scott & White.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13).  The Texas Supreme

Court has observed that the phrase "cause of action" denotes the existence or alleged existence of

"a fact or facts entitling one to institute and maintain an action, which must be proved in order to

obtain relief" or a "group of operative facts giving rise to one or more bases for suing; a factual

situation that entitles one person to obtain a remedy in court from another person." *In re Jorden*,

249 S.W.3d 416, 421 (Tex. 2008) (orig. proceeding) (quoting *A.H. Belo Corp. v. Blanton*, 129 S.W.2d 619, 621 (Tex. 1939); Black's Law Dictionary 235 (8th ed. 2004)); *see Certified EMS, Inc. v. Potts*, No. 01-10-00106-CV, 2011 Tex. App. LEXIS 3817, at *18-19 (Tex. App.—Houston [1st Dist.] May 19, 2011, pet. filed) (op. on reh'g) (making the same observation). Consequently, the Legislature's use of "cause of action" signals that we are to determine whether Henley's right to relief is predicated on facts relating to a patient's "treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care," rather than focusing on the legal theories (e.g., "statutory violations," "ordinary negligence," etc.) on which Henley relies. *See Certified EMS, Inc.*, 2011 Tex. App. LEXIS 3817, at *18-20; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 74.001(13) ("whether the claimant's claim or cause of action sounds in tort or contract" is not what controls whether the cause of action is an HCLC); *In re Jorden*, 249 S.W.3d at 421-22 (similarly observing that because a "cause of action" derives from the presence of certain types of facts, its existence does not depend on whether suit has actually been filed). In making this determination, we look to whether "the act or omission complained of is an inseparable part of the rendition of medical services." *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 848 (Tex. 2005). We consider such factors as whether a specialized standard in the health-care community applies to the circumstances in question and whether the alleged acts or omissions involve medical judgment related to the patient's care or treatment. *See id.* at 847-52; *Drewery*, 344 S.W.3d at 502. The necessity of expert testimony from a medical professional to prove a cause of action may also be an important factor in determining whether the acts or omissions are an inseparable part of the

5

rendition of medical services. *Diversicare Gen. Partner, Inc.*, 185 S.W.3d at 851; *Drewery*, 344 S.W.3d at 502. In sum, we consider the "underlying nature," "essence," or "gravamen" of the cause of action rather than the manner in which it is pleaded. *Yamada v. Friend*, 335 S.W.3d 192, 197 (Tex. 2010); *Diversicare Gen. Partner, Inc.*, 185 S.W.3d at 847.

Henley's factual allegations are:[2]

- "On or about the 21st o[f] December, 2007, while Sammy Henley was under the care of the defendants, [he] suffered cardiac arrest after the mishandling / malfunction of a device used to transfer patients from bed to chair at Scott & White Continuing Care hospital."

- "On or about this date, while Sammy Henley was under the care of defendants, said defendants neglected to provide Sammy Henley with adequate and timely medical care and treatment."[3]

- "As a proximate cause of the actions of the defendants, Sammy Henley suffered deprivation of oxygen to his brain for a period of time which resulted in anoxic brain injury which resulted in his death on the 28th day of February, 2008."

Based on these factual allegations, Henley goes on to assert various legal theories, including negligence (in "[n]egligently failing to provide Sammy Henley with adequate and timely medical care and treatment," "[n]egligently failing to attend and treat," "[n]egligent use of medical instruments," "[n]egligent usage of dangerous and defective medical instruments," and "[n]egligently

---

[2] The foregoing facts are taken from Henley's second amended petition, her live pleading at the time of the district court's judgment. Scott & White points out that Henley filed this amended pleading, as well as a first amended petition, only after the 120-day period had already expired and Scott & White had filed its dismissal motion. We will afford Henley the benefit of her attempts to replead her claims to avoid dismissal and assume without deciding that her most recent pleading is the one relevant to our analysis.

[3] Henley's pleading contains a subsequent paragraph that is materially identical to this one, differing only in specifying that the date in question was "[o]n or about the 21st of December, 2007."

failing to prevent malnutrition and dehydration"), "neglect," "abuse," "harassment," "infliction of emotional distress," "res ipsa loquitur," "breach of contract," "negligence per se," and violations of various health and safety code provisions relating to the care of hospital patients.

The underlying nature of Henley's cause of action is that her husband was injured and ultimately died as a result of Scott & White's failure to act with the proper degree of care when treating and caring for her husband while he was a patient in its care. It is plainly an HCLC. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 74.001(10) ("Health care" means any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement.), (13) (defining "health care liability claim" to include cause of action for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety).

In asserting the contrary, Henley emphasizes that she purports to rely on legal theories other than "medical malpractice." This, again, is not the proper focus of the analysis. *See Certified EMS, Inc.*, 2011 Tex. App. LEXIS 3817, at *18-20. If the underlying facts amount to an HCLC, the claimant is required to serve an expert report, and a claimant cannot avoid the TMLA's requirements by purporting to assert a non-HCLC based on those same underlying facts. *Yamada*, 335 S.W.3d at 196-98; *accord Turtle Healthcare Grp., L.L.C. v. Linan*, 337 S.W.3d 865, 868-69 (Tex. 2011) (per curiam). To hold otherwise, the supreme court has reasoned, would invite plaintiffs to "split or splice[]" HCLCs "into a multitude of other causes of action with different standards of care, damages, and procedures . . . contraven[ing] the Legislature's explicit requirements." *Yamada*, 335 S.W.3d at 197-98 (citing *Diversicare Gen. Partner, Inc.*, 185 S.W.3d at 854). Thus, a claimant

cannot, for example, avoid the TMLA's requirements by purporting to assert, as does Henley, a claim for "ordinary negligence" based on underlying facts constituting an HCLC. *See Harris Methodist Fort Worth v. Ollie*, 342 S.W.3d 525, 525-27 (Tex. 2011) (per curiam) ("ordinary negligence" claim arising from patient's slip-and-fall was an HCLC because it was based on the health care provider's "failure . . . to act with a proper degree of care to furnish a dry floor, warn her of the hazards of a wet bathroom floor, or some similar failure to act"); *see also St. David's Healthcare P'ship, L.P., LLP v. Esparza*, No. 10-0524, 2011 Tex. LEXIS 609, at *4-5 (Tex. Aug. 26, 2011) (per curiam) (holding that plaintiff's claim for injury as a result of slipping on lubricating gel on floor constituted HCLC); *Omaha Healthcare Ctr., LLC v. Johnson*, 344 S.W.3d 392, 393 (Tex. 2011) (holding that negligence claims against a nursing home for patient's death resulting from being bitten by a spider while in the nursing home's care constituted HCLCs).

Beyond these arguments, Henley raises a number of policy complaints regarding the TMLA's expert-report requirement and the difficulties it may create for claimants, especially where, like Henley, they are attempting to represent themselves. But we are not free to rewrite the statute in the guise of construing it. *E.g.*, *Stockton v. Offenbach*, 336 S.W.3d 610, 619 (Tex. 2011).

Because the facts underlying Henley's claims constitute an HCLC, she was required to serve an expert report. *See Marks*, 319 S.W.3d at 661, 664 (holding that claims for negligent care, an unsafe recovery environment, and a defectively attached footboard were HCLCs requiring an expert report). The district court was thus required to dismiss Henley's suit after she failed to do so, and did not err in complying with that requirement. *See* Tex. Civ. Prac. & Rem. Code

Ann. § 74.351(b); *Scoresby*, 2011 Tex. LEXIS 516, at *21-22.   Accordingly, we affirm the

district court's judgment.


_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Henson

Affirmed

Filed:   October 26, 2011