**Opinion issued July 19, 2012.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-11-00764-CV

————————————

**CHCA BAYSHORE, L.P. D/B/A EAST HOUSTON REGIONAL MEDICAL CENTER AND PASADENA BAYSHORE HOSPITAL, INC., Appellants**

**V.**

**AMY RAMOS AND RICHARD RAMOS, Appellees**

---

On Appeal from the 234th District Court
Harris County, Texas
Trial Court Case No. 2010-49225

---

## DISSENTING OPINION

Because the claim of appellees, Amy and Richard Ramos, against appellants, CHCA Bayshore, L.P., doing business as East Houston Regional Medical Center, and Pasadena Bayshore Hospital, Inc., for negligent infliction of emotional distress

resulting from the mishandling of the remains of their unborn child is not a claim in which they seek to establish "medical liability," i.e., a "health care liability claim" as actually defined by the Texas Legislature, I respectfully dissent. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13) (Vernon 2011).

Under chapter 74 of the Texas Civil Practice and Remedies Code, which is expressly entitled, "**Medical Liability**," the Texas Legislature defines a "**[h]ealth care liability claim**" as

> [A] cause of action against a health care provider or physician ***for*** treatment, lack of treatment, or ***other claimed departure from accepted standards of*** medical care, or health care, or ***safety or professional or administrative services directly related to health care***, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

*Id.* § 74.001(a)(13) (emphasis added). The legislature further defines "**health care**" as

> [A]ny act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider ***for, to, or on behalf of a patient during the patient's medical care, treatment or confinement***.

*Id*. § 74.001(a)(10) (emphasis added).

In regard to the term "directly related," the restrictive adjective "related" is defined as "belonging to the same family, group, or type; connected" and "associated with the specified item or process, esp. causally: *income-related*

2

*benefits*." THE NEW OXFORD AMERICAN DICTIONARY 1437 (2001). The restrictive adverb "directly" is defined as

> In a direct manner or way. . . . 1. b. Straightforwardly; pointedly; simply; plainly; correctly; rightly . . . . 4. Completely, absolutely, entirely, exactly, precisely, just. . . .

THE COMPACT OXFORD ENGLISH DICTIONARY 439 (2nd ed. 1993). In short, "directly" means "with nothing or no one between." THE NEW OXFORD AMERICAN DICTIONARY 483.

Accordingly, in assessing whether the claim of a plaintiff brought against a physician or health care provider is a "health care liability claim," as meant by the Texas Legislature in chapter 74 as one seeking to establish actual "medical liability," a court must very simply determine whether the plaintiff's cause of action is one "for" a physician or health care provider's

(1)    "treatment,"

(2)    "lack of treatment, or"

(3)    "other claimed departure from accepted standards of"

    (a)    "medical care, or"

    (b)    "health care, or"

    (c)    "safety or professional or administrative services ***directly related*** to health care."

TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13) (emphasis added). In regard to "other claimed departure[s] from accepted standards" of "safety or professional

3

or administrative services," the plaintiff's cause of action, by the legislature's express definition, must specifically be "***directly related***" to the provision of "***health care***," i.e.:

(1) An "act or treatment"

    (a) "performed or furnished, or"

    (b) "that should have been performed or furnished,"

(2) "by any health care provider"

(3) "***for, to, or on behalf of a patient***"

(4) "***during the patient's***"

    (a) "***medical care***,"

    (c) "***treatment***," or

    (c) "***confinement***."

*Id.* § 74.001(a)(10) (emphasis added).

Here, the Ramoses' cause of action for negligent infliction of emotional distress for the mishandling of the remains of their unborn child, which actually occurred after Mrs. Ramos had already received properly administered medical treatment, is not one seeking to establish liability for a "medical" injury to either the unborn child or to Mrs. Ramos as patients. Their claim does not concern "treatment" or "lack of treatment." The Ramoses are not seeking medical-liability damages for a "claimed departure from accepted standards" of "medical care" or

4

"health care." Nor, contrary to the majority's opinion, are they asserting a claim against appellants for their "departure from accepted standards" of "safety or professional or administrative services ***directly related to health care***." *See id.* § 74.001(a)(13) (emphasis added). The Ramoses are not complaining about an "act or treatment performed or furnished, or that should have been performed or furnished, . . . for, to, or on behalf of a patient ***during the patient's medical care, treatment, or confinement***." *See id.* § 74.001(a)(10) (emphasis added). Thus, their cause of action for the mishandling of their unborn child's remains is not "directly related" to the provision of health care to either the mother or the unborn child. Their cause of action simply does not fall within the Texas Legislature's definition of a "health care liability claim." The Ramoses are not at all seeking to establish appellants' medical liability for the negligent provision of "health care." They are seeking mental anguish damages because someone, *after* Mrs. Ramos had received medical treatment, mixed up the remains of their unborn child with another person's toe.

Regardless of the plain language of the legislature's definition of "health care liability claim," appellants assert that the Ramoses have sued them to establish medical liability for a claimed departure from accepted standards of professional or administrative services directly related to health care. In support of their assertion, appellants rely upon *Omaha Healthcare Center, L.L.C. v. Johnson*, 344 S.W.3d

5

392, 394–95 (Tex. 2011) (holding that claim against nursing home regarding patient's death from spider bite "fell within the statutory definition of a health care liability claim"), *Yamada v. Friend*, 335 S.W.3d 192, 196–98 (Tex. 2010) (holding that claim against doctor for negligently advising water park regarding defibrillators constituted health care liability claim), *Marks v. St. Luke's Episcopal Hospital*, 319 S.W.3d 658, 663–64 (Tex. 2010) (holding that claim against hospital regarding patient's fall caused by defective footboard on hospital bed constituted health care liability claim), and *Diversicare General Partner, Inc. v. Rubio*, 185 S.W.3d 842, 849–55 (Tex. 2005) (holding that claim that hospital provided inadequate supervision, leading to patient's sexual assault by another patient, constituted health care liability claim). Although appellants' reliance on these opinions is not entirely misplaced, the opinions are not controlling given the unique allegations presented here. In the instant case, the alleged act of negligence, i.e., the mishandling of the remains of the unborn child, occurred after and not "***during*** [a] patient's medical care, treatment or confinement." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(10) (emphasis added). And the Ramoses are not alleging an act of negligence regarding any testing done on the remains.

It is true that the Texas Supreme Court, rather than relying upon the express, plain language of the legislature's definition of "health care liability claim" as outlined above, has instead established its own definition with a three-pronged test:

> [A] health care liability claim consists of three elements. First, a physician or health care provider must be the defendant. Second, the suit must be about the patient's treatment, lack of treatment or some other departure from accepted standards of medical care or health care or safety. And, third, the defendant's act, omission, or other departure must proximately cause the patient's injury or death.

*Marks*, 319 S.W.3d at 662 (emphasis added).

The supreme court's test is problematic[1] given the fact that it makes no reference to the restrictive adjective "related" with the more restrictive adverb "directly," i.e., "with nothing . . . between." Instead, the supreme court more generally states that anything that could be described to be "about" "safety" qualifies as a health care liability claim.

Moreover, the supreme court's definition of "health care liability claim," consisting of "three elements," does not take into account the specific language

---

[1] Former Texas Court of Criminal Appeals Presiding Judge John F. Onion warned long ago about fashioning such tests:

> We do not need another three-prong test, a two-step analysis or a multi-stage standard in our decisional law. There are enough of those now to decorate a Christmas tree.

*Ex Parte Williams*, 704 S.W.2d 773, 785 (Tex. Crim. App. 1986) (Onion, P.J., concurring in part and dissenting in part). His warning seems particularly pertinent when it comes to construing the plain language actually used in our constitution and statutes.

actually used by the legislature in its definition of "health care," which includes an "act" performed or furnished, or that should have been performed or furnished, by a health care provider "***for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement***." TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(10) (emphasis added). Such an "act," in regard to a plaintiff's cause of action for "medical liability" for a claimed departure from accepted standards of "safety or professional or administrative services directly related to health care," would necessarily include medical testing and diagnostic services, the collection and proper dissemination of the patient's status and test results and pertinent information, and, in regard to a patient who is a danger to himself, proper restraint or confinement of the patient for his safety. These services would constitute an "act" by a health care provider "***for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement***." *See id*. (emphasis added). Such an "act" would not include routine facility pest control, janitorial services, general maintenance of items like the footboard of a hospital bed, or security and safety services not "directly related to health care."

The Texas Legislature has, through its choice of plain language, manifested its intent that chapter 74 of the Texas Civil Practice and Remedies Code apply only to causes of action in which a plaintiff is seeking to establish actual and real "medical liability," as the statute itself is entitled. Such a cause of action must

really be one for an injury or death proximately caused by a health care provider or physician's actual

    (1)    "treatment,"

    (2)    "lack of treatment, or"

    (3)    "other claimed departure from accepted standards of"

        (a)    "medical care, or"

        (b)    "health care, or"

        (c)    "safety or professional or administrative services ***directly related to health care***."

*Id.* § 74.001(a)(13) (emphasis added).

Regardless, consistent with its previous holdings in *Diversicare* and its progeny, a majority of the Texas Supreme Court has recently held that "the safety component of [health care liability claims] ***need not be directly related to the provision of health care***." *Tex. West Oaks Hosp. v. Williams*, No. 10-0603, 2012 WL 2476807, at *11 (Tex. June 29, 2012) (emphasis added). In explaining the basis of this extraordinary holding, the court asserts that the phrase "directly related to health care" only modifies the terms immediately before it, i.e., "professional or administrative services." *Id*. at *10–11. Thus, it concludes that the phrase "directly related to health care" does not modify the word "safety." *Id.* at *11. Respectfully, as revealed above, the premise—the sole foundation—of the court's conclusion is objectively false.

9

In order to reasonably conclude that the phrase "directly related to health care" does not modify the word "safety," one has to read the word "safety" as if it were in a clause separate and apart from the clause "or safety or professional or administrative services directly related to health care . . . ." The only way that one might possibly read section 74.001(13) as does the majority of the supreme court would be if the legislature had included a comma directly after the word "safety," intentionally separating it from the rest of the clause in which it is actually included. And this the legislature did not do. As revealed above, a plain reading of the section, as it is actually written, reveals that the legislature did not at all intend to separate the word "safety" from the clause "or safety or professional or administrative services directly related to health care . . . ." By the use of its plain language in one clause, the legislature intended that the words "services directly related to health care" modify the words "safety," "professional," and "administrative." If it had intended otherwise, it would not have included all of these words in the same clause.

Accordingly, in order to constitute a "health care liability claim" as defined by the Texas Legislature, a cause of action must be (1) "for treatment," (2) for "lack of treatment," (3) for "other claimed departures from accepted standards of medical care," (4) for "other claimed departures from accepted standards of . . . health care," or (5) for "other claimed departures from accepted standards of"

10

safety services, professional services, or administrative services "***directly related to health care***." TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13) (emphasis added). In other words, contrary to the supreme court's reading of the statute and recent holding, the Texas Legislature has expressly provided that all claims to establish "medical liability," defined as "health care liability claim[s]," must be for claims "directly related to health care." *See id*.

As has been noted before by several members of the supreme court, its construction and application of the legislature's definition of "health care liability claim" is in fact at odds with the express and plain language actually used by legislature in defining the term. *See Williams*, 2012 WL 2476807, at *19–22 (Lehrmann, J., dissenting; joined by JJ. Medina and Willett); *Johnson*, 344 S.W.3d at 396–99 (Lehrmann, J., dissenting; joined by J. Medina); *Marks*, 319 S.W.3d at 674–86 (Jefferson, C.J., concurring in part and dissenting part; joined by JJ. Green, Guzman, and Lehrmann); *Id.* at 686–87 (Guzman, J., dissenting); *Diversicare*, 185 S.W.3d 842, 861-67 (O'Neill, J. dissenting; joined by JJ. Brister and Green). As illustrated in these dissenting opinions, at least six of the current members of the Texas Supreme Court have, at some time or another, disagreed with a majority of the court's construction and application of the term "health care liability claim."

Nevertheless, the supreme court's opinions, no matter how erroneous, controversial, or divided that they may be, constitute binding precedent. And there

11

is a "strong presumption" against overruling precedent. *Gutierrez v. Collins*, 583 S.W.2d 312, 317 (Tex. 1979). Absent compelling reasons, courts should avoid overturning their opinions because "the legitimacy of the judiciary rests in large part upon a stable and predictable decision making process"; without adherence to precedent, no question of law would ever be considered resolved. *Weiner v. Wasson*, 900 S.W.2d 316, 320 (Tex. 1995).

However, compelling reasons to overturn precedent do exist in limited circumstances, such as when the preceding decision itself is incorrect or unconstitutional, there is conflicting precedent, the decision has been undercut by the passage of time, the precedent creates inconsistency and confusion, or the decision consistently creates unjust results. *See Hammock v. State*, 46 S.W.3d 889, 892–93 (Tex. Crim. App. 2001); *see also In re Columbia Med. Ctr. Of Las Colinas, Subsidiary, L.P.*, 290 S.W.3d 204, 218 (Tex. 2009) (O'Neill, J., dissenting); *Bowman Biscuit Co. v. Hines*, 151 Tex. 370, 376, 251 S.W.2d 153, 155 (1952) (Garwood, J., dissenting).

Here, there are indeed compelling reasons for the Texas Supreme Court to overrule *Diversicare* and its progeny. First, and most important, as outlined above, the supreme court's definition of "health care liability claim" is at odds with the Texas Legislature's actual definition; thus, it is objectively incorrect. Chief Justice Jefferson has noted that, as the supreme court itself has "often explained,"

12

> Courts must take statutes as they find them. More than that, they should be willing to take them as they find them. They should search out carefully the intendment of a statute, giving full effect to all of its terms. But they must find its intent in its language, and not elsewhere. They are not the law-making body. They are not responsible for omissions in legislation. They are responsible for a true and fair interpretation of the written law. It must be an interpretation which expresses only the will of the makers of the law, not forced nor strained, but simply such as the words of the law in their plain sense fairly sanction and will clearly sustain.

*Diversicare*, 185 S.W.3d at 860 (Jefferson, C.J., concurring in part and dissenting in part) (quoting *Simmons v. Arnim*, 110 Tex. 309, 220 S.W. 66, 70 (Tex. 1920), *quoted in St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex. 1997), *RepublicBank Dallas, N.A. v. Interkal, Inc.*, 691 S.W.2d 605, 607 (Tex. 1985), and *Tex. Highway Comm'n v. El Paso Bldg. & Constr. Trades Council*, 149 Tex. 457, 468, 234 S.W.2d 857, 863 (1950)). Straightforward statutory construction ensures that everyone is able "to rely on the plain language of a statute to mean what it says." *Fitzgerald v. Advanced Spine Fixation Sys.*, 996 S.W.2d 864, 866 (Tex. 1999). However, when courts "abandon the plain meaning of words," their "statutory construction rests upon insecure and obscure foundations at best." *State v. Jackson*, 376 S.W.2d 341, 346 (Tex. 1964) (quoting *State Bd. of Ins. v. Betts*, 158 Tex. 612, 615, 315 S.W.2d 279, 281 (1958)).

Second, as noted above, four of the five supreme court opinions addressing the meaning and application of the terms "health care liability claim" and "health care" have drawn well-reasoned dissents. In their dissent in *Diversicare* in 2005,

13

Justices O'Neill, Brister, and Green warned against too broad of an interpretation of the definition of a "health care liability claim" and "sweep[ing] even ordinary negligence claims into the ambit of [medical liability]." 185 S.W3d at 862–63 (O'Neill, J., dissenting; joined by JJ. Brister and Green). In 2010, Justice Guzman further warned against "sweeping even simple negligence claims under the umbrella of medical malpractice." *Marks*, 319 S.W.3d at 686 (Guzman, J., concurring in part and dissenting part). She noted that the supreme court risked "thwart[ing] the very purpose" of chapter 74, "which is to reduce the cost of medical malpractice insurance in Texas so that patients can have increased access to health care." *Id.*

Recently, in *Williams*, Justices Lehrmann, Medina, and Willett warned that the majority of the supreme court has created "[a] whole new world" by misinterpreting the express language used by the legislature to define "health care liability claim" as including claims not directly related to the provision of health care. 2012 WL 2476807, at *18 (J. Lehrmann, dissenting; joined by JJ. Medina and Willett). They noted that the court's definition "is so broad that almost any claim against a health care provider can now be deemed a health care liability claim" even though the claim may not at all be one to establish medical liability. *Id.* at *24. In response, the majority of the supreme court opined that the *Williams* dissenters' construction of the definition—requiring that a health care liability

14

claim actually be "directly related" to the provision of health care to establish "medical liability"—is "nonsensical." *Id.* at *10, 13–18. However, respectfully, the court's definition, when viewed objectively as illustrated above, does not comport with reality.

Time has now proven beyond all doubt that the dissenters were right—the definition of "health care liability claim" as used by the supreme court in *Diversicare* and its progeny has swallowed up virtually every cause of action to be made against a physician or health care provider no matter how far removed it may be from the actual provision of health care for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement. *See id.* at *18 (Lehrmann, J., dissenting) (noting that supreme court's holding that "employee's claims against his employer for providing an unsafe workplace and inadequate training are health care liability claims" reveals that "'[a] whole new world [of health care liability claims], hinted by opinions in the last few years, is here.'") (quoting *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 470 (Tex. 2008) (Wainwright, J., dissenting)); *see also Johnson*, 344 S.W.3d at 396 (Lehrmann, J., dissenting) ("In holding that inadequate pest control [constitutes] a health care safety violation, the Court essentially declares that all injuries in a health care setting are subject to chapter 74, without explicitly saying so. As a result of the Court's holding, any patient injured in a hospital will be required to file an expert report even though the injury

15

is entirely unrelated to the delivery of health care services. If it had been the Legislature's intent to subject all claims against health care providers to the statute, 'it would have defined a "health care liability claim" to be any claim against a physician or health care provider in a medical or health care setting.'") (quoting *Drewery v. Adventist Health Sys./Tex., Inc.*, 344 S.W.3d 498, 503 & n.4 (Tex. App.—Austin 2011, pet. filed)).

Third, the Texas Supreme Court's definition of "health care liability claim" is not only at odds with the Texas Legislature's actual definition, it has necessarily proven unworkable, resulting in inconsistency, confusion in its application, and more litigation.

Finally, as illustrated by the above dissenting opinions, the application of the supreme court's definition of what constitutes a "health care liability claim" has consistently created manifestly unjust results. Legitimate, ordinary, and simple negligence and premises-liability claims, not at all related to the provision of health care, have been dismissed simply because the plaintiffs did not hire an "expert" to write a report detailing what would be quite obvious to lay persons. *See Johnson*, 344 S.W.3d at 396 (J. Lehrmann, dissenting) ("In holding that a spider bite in a nursing home [constitutes] a health care liability claim for which an expert report is required, the Court reaches a result that is contrary to the Legislature's intent, belies common sense, and contorts the role of experts in health care litigation.").

16

The bottom line is that the supreme court's objectively incorrect definition of "health care liability claim" is being used as a "gotcha" to dismiss ordinary and simple negligence and premises-liability claims that, as alleged, are not frivolous and have merit.

In other words, although an "expert" report in ordinary negligence and premises-liability cases made against physicians or health care providers is not at all necessary to evaluate whether a plaintiff's claim is frivolous, the plaintiff, given the supreme court's definition, must nevertheless hire an "expert" to write a report and then provide the meaningless report to defense counsel for the sole purpose of avoiding the dismissal of the lawsuit. The requirement of such a meaningless act truly places form over substance, belittles the practice of law, and serves only to undermine the Rule of Law. It certainly does not serve to uphold the integrity and legitimacy of our judicial institutions. *See Weiner*, 900 S.W.2d at 320.

Accordingly, I respectfully request that the Texas Supreme Court overrule *Diversicare* and its progeny, adopt the Texas Legislature's actual definitions of "health care liability claim" and "health care" as quoted and outlined above, and put an end to the manifestly unjust results that necessarily flow from requiring plaintiffs to serve upon defense counsel a meaningless "expert" report for ordinary negligence and premises-liability claims made against physicians and health care providers.

17

Even if the supreme court declines to overrule *Diversicare* and its progeny, the Ramoses' factually-specific claim for negligent infliction of emotional distress is not controlled by *Diversicare* and its progeny. Contrary to the majority's opinion, the trial court's order denying appellants' motion to dismiss the Ramoses' claim should be affirmed because the Ramoses are not asserting a claim against appellants for their departure from accepted standards of professional or administrative services ***directly related to health care***. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13) (emphasis added). They simply are not complaining about an "act or treatment performed or furnished, or that should have been performed or furnished, . . . for, to, or on behalf of a patient ***during the patient's medical care, treatment, or confinement***." *See id.* § 74.001(a)(10) (emphasis added).

Terry Jennings
Justice

Panel consists of Justices Jennings, Massengale, and Huddle.

Justice Jennings, dissenting.